UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| VANDERBILT UNIVERSITY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO. 3:18-cv-00046 |
|  | ) | CHIEF JUDGE CRENSHAW |
| SCHOLASTIC, INC., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM OPINION AND ORDER

Before the Court is a Report and Recommendation ("R&R") from the Magistrate Judge (Doc. No. 67) concerning Vanderbilt University's ("Vanderbilt") Motion to Disqualify Neal & Harwell, PLC ("Neal & Harwell") from the representation of Defendant Ted S. Hasselbring (Doc. No. 49). Hasselbring has timely filed objections (Doc. Nos. 69, 70), Vanderbilt has responded (Doc. No. 73), and Neal & Harwell has replied (Doc. No. 76).

I. Legal Standard

As an initial matter, the parties appear to have been flummoxed because the Magistrate Judge issued the underlying decision a report and recommendation rather than an order. This was likely an oversight by the Magistrate Judge. Pursuant to the Court's initial referral, it is within the purview of the Magistrate Judge to decide non-dispositive motions in this case. (Doc. No. 9); L.Civ.R. 16.01. A motion to disqualify is a non-dispositive motion. See, e.g., Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC, No. 3:15-CV-4547-TAV-HBG, 2017 WL 2345571, at *1 (E.D. Tenn. May 30, 2017); Harper v. Everson, Civil Action No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *2 (W.D. Ky. May 5, 2016); DeBiasi v. Charter Cty. of Wayne, 284 F. Supp. 2d

760, 768 (E.D. Mich. 2003). Accordingly, the Magistrate Judge's ruling, although embodied in the R&R, was a decision on a non-dispositive matter and the Court will treat it as such.

"When a district judge reviews a magistrate judge's resolution of a non-dispositive matter, it is not a *de novo* review, as it is in relation to a magistrate judge's recommendation as to a dispositive matter." Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc., No. 2:07-cv-116, 2013 WL 992125, at *6 (S.D. Oh. Mar. 13, 2013); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001). Rather, the Magistrate Judge's decision is subject to review under Rule 72(a) and reversal when it "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Curtis, 237 F.3d at 603; Direct Line Corp. v. Carrington, No. 3:10-0423, 2010 WL 5139003, at *2 n.3 (M.D. Tenn. Dec. 10, 2010). The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard." E.E.O.C. v. Burlington N. & Santa Fe Ry. Co., 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009).[1]

Here, Neal & Harwell does not object to any of the factual findings of the R&R.[2] (Doc. No. 69 at 1.) Therefore, the Court focuses on the Magistrate Judge's legal conclusions. "When examining legal conclusions under the contrary to law standard, the Court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent."[3] David v. Kohler Co., No. 2:15-cv-01263-STA-egb,

---

[1] Neal & Harwell cites to L.Civ.R. 72.03, which provides that the Court may refer non-dispositive motions for a report and recommendation, and also cites to cases in which district courts referred a motion to disqualify to a magistrate judge for a report and recommendation, and then considered the resulting report and recommendation *de novo*. (Doc. No. 76 at 15-16.) However, a referral for a report and recommendation did not occur here, and Neal & Harwell is not entitled to *de novo* review under Rule 72(b).

[2] This negates any need to consider the question of the Court receiving further factual evidence.

[3] "[C]ourts regularly consider opinions offered by legal ethics experts in deciding motions to disqualify counsel." Howard v. Wilkes & McHugh, P.A., No. 06-2833 Ml/P, 2007 WL 9706137,

2017 WL 3865656, at *4 (W.D. Tenn. Aug. 30, 2017) (quoting Doe v. Aramark Educ. Res., Inc., 206 F.R.D. 459, 461 (M.D. Tenn. 2002)); see also 32 Am. Jur. 2d Fed. Cts. 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.").

II. Discussion

A. Background

The agreed-upon facts are straightforward. Mr. Arrin Richards is an attorney who until late 2017 worked in the Office of the General Counsel at Vanderbilt. In that capacity, he was familiar with, and involved in, Vanderbilt's investigation and negotiations, as well as its legal strategies and positions regarding the license agreement which is the subject matter of this litigation. Mr. Richards participated in issues related to Defendant Hasselbring, including preparation for an in-person interview.

In September 2017, Mr. Richards applied for a position with Neal & Harwell. He interviewed and was offered a position with the firm. Mr. Richards accepted the offer and began working with Neal & Harwell on January 2, 2018. At the time Mr. Richards accepted employment with Neal & Harwell, the instant lawsuit had not been filed. On January 16, 2018, the Complaint was filed and Hasselbring received an email from Vanderbilt attaching a courtesy copy. Until that time, Hasselbring had not attempted to contact or retain counsel in connection with the matter. Based on his personal knowledge of attorney Aubrey Harwell and the recommendations of others,

---

at *3 (W.D. Tenn. Aug. 24, 2007). This makes sense, because, under Tennessee law, determining a lawyer's standard of care is often accomplished with the assistance of expert testimony. Spurlock v. Halprin, No. 3:04-1148, 2006 WL 2346003, at *8 (M.D. Tenn. Aug. 11, 2006). Accordingly, to the extent doing so can assist the Court with determining whether the Magistrate Judge's decision is "contrary to law," the Court finds it appropriate to consider the expert declarations on legal ethics submitted by both parties.

Hasselbring sought representation from Neal & Harwell. On January 18, 2018, Hasselbring contacted Harwell about representation.

Pursuant to Neal & Harwell's policies and practices, an email was circulated to determine if any of the attorneys within the firm had a conflict with Hasselbring's representation. Mr. Richards responded regarding his familiarity with the matter and indicated that he should be screened from all information related to the representation. The conflict was confirmed and the firm implemented certain screening procedures. Both Mr. Richards and Mr. Harwell have filed sworn declarations (a) indicating that no confidential or privileged information was disclosed involving Vanderbilt's investigation or any other information related to Mr. Richards' previous representation of Vanderbilt in this or any other matter, and (b) stating their understanding and intention to abide by the firm's screening procedures.

After agreeing to represent Hasselbring, Neal & Harwell promptly notified counsel for Vanderbilt of Mr. Richards' conflict of interest and their screening procedures. After being advised by Neal & Harwell that Mr. Richards joined the firm prior to the filing of this action, and being unwilling to waive any conflict, Vanderbilt filed its Motion to Disqualify Neal & Harwell pursuant to Tennessee Supreme Court Rule 8, RPC 1.10. Vanderbilt does not contend that there has been any actual violation of attorney confidences by Mr. Richards.

B.  Relevant Rules

Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.10 addresses the issue of "imputed disqualification" concerning the movement of lawyers between firms. It speaks to whether any lawyers associated with the new firm are allowed to represent a client if the Rules of Professional Conduct prevent one of the firm members from doing so alone. In particular, Rule 1.10(c) states:

Except with respect to paragraph (d) below, if a lawyer is personally disqualified from representing a person with interests adverse to a client of a law firm with which the lawyer was formerly associated, other lawyers currently associated in a firm with the personally disqualified lawyer may nonetheless represent the person if both the personally disqualified lawyer and the lawyers who will represent the person on behalf of the firm act reasonably to:

> (1) Identify that the personally disqualified lawyer is prohibited from participating in the representation of the current client; and
>
> (2) Determine that no lawyer representing the current client has acquired any information from the personally disqualified lawyer that is material to the current matter and is protected by RPC 1.9(c); and
>
> (3) Promptly implement screening procedures to effectively prevent the flow of information about the matter between the personally disqualified lawyer and the other lawyers in the firm; and
>
> (4) Advise the former client in writing of the circumstances that warranted the implementation of the screening procedures required by this rule and of the actions that have been taken to comply with this rule.

RPC 1.10(c). However, Rule 1.10(d) states:

> The procedures set forth in paragraph (c) may not be used to avoid imputed disqualification of the firm, if:
>
> (1) The disqualified lawyer was substantially involved in the representation of a former client; and
>
> (2) The lawyer's representation of the former client was in connection with an adjudicative proceeding that is directly adverse to the interests of a current client of the firm; and
>
> (3) The proceeding between the firm's current client and the lawyer's former client is still pending at the time the lawyer changes firms.

Rule 1.10(d). As the Magistrate Judge correctly explained, Rule 1.10(d) essentially provides a condition precedent that, if met, prevents a law firm from relying on the provisions of Rule 1.10(c), particularly the screening mechanism, to avoid a potential conflict of interest.

C. The Magistrate Judge's Decision

Before the Magistrate Judge, both sides agreed that Mr. Richards himself is disqualified from representing Hasselbring in this matter. The issue was whether that disqualification must be imputed to all attorneys of Neal & Harwell, or whether the firm's screening efforts were sufficient to avoid imputed disqualification. The Magistrate Judge acknowledged considerations of, on the one hand, allowing reasonable choice of legal counsel and, other the other hand, "reasonably assuring the principle of loyalty to the prior client is not compromised and that confidential information related to the representation will not be utilized against the client." (Doc. No. 67 at 5-6 (citing RPC 1.10 cmt. 5).) The Magistrate Judge, with the agreement of the parties, identified that the key provision at issue was Rule 1.10(d)(3). But he rejected Neal & Harwell's argument that Rule 1.10(d) does not apply unless the hiring firm was already representing a client in a proceeding adverse to the conflicted attorney's former client. (Id. at 7.) Rather, the Magistrate Judge concluded, the "chief concern" appeared to be whether the conflicted attorney was "substantially involved" in the matters that are the subject of the instant litigation "irrespective of whether the new firm was involved in that litigation prior or subsequent to the conflicted attorney's hiring by the new firm." Id. at 7-8. The Magistrate Judge therefore rejected Neal & Harwell's argument that this case was not "pending" when Mr. Richards changed firms and therefore Rule 1.10(d) is inapplicable, in favor of Vanderbilt's argument that "the existence of an actual lawsuit is not a condition precedent to the application of the rule but rather, whether the disqualified lawyer was substantially involved in the representation of the former client in the subject matter of the

6

current litigation." Id. at 8. Accordingly, the Magistrate Judge concluded that Neal & Harwell should be disqualified pursuant to Rule 1.10(d).

C. Objections and Discussion

Neal & Harwell objects to the Magistrate Judge's conclusion that it should be disqualified, arguing that, under Rule 1.10(d), this matter was not "pending" two weeks before the complaint was filed, when Mr. Richards left Vanderbilt and joined Neal & Harwell. (Doc. No. 69.) Neal & Harwell asserts that (1) Rule 1.10(d) is unambiguous; (2) this matter was not "pending" when Mr. Richards joined Neal & Harwell; (3) the Magistrate Judge's analysis should have stopped there under relevant law; and (4) the Magistrate Judge's alternate, policy-based reasoning was incorrect. Because the Court agrees with the first three points, it need not reach the fourth.

The rules governing practice and procedure in the courts of Tennessee have "the force and effect of law," Crosslin v. Alsup, 594 S.W.2d 379, 380 (Tenn. 1980), and traditional rules of statutory construction apply, Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 25 (Tenn. 2012). When a statute is clear, "we apply the plain meaning without complicating the task." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). The language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968). Any interpretation of a statute that "would render one section of the act repugnant to another" should be avoided. Tenn. Elec. Power Co. v. City of Chattanooga, 114 S.W.2d 441, 444 (Tenn. 1937).

The Tennessee Supreme Court has explicitly held that "a lawsuit becomes 'pending' when the complaint is filed." See West v. Vought Aircraft Indus., Inc., 256 S.W.3d 618, 626 (Tenn. 2008) ("Our holding today is designed to eliminate . . . confusion and clearly establish that the pendency of a case begins with the filing of a complaint."); see also Hancock v. Bd. of Prof'l

7

Responsibility, 447 S.W.3d 844, 851 (Tenn. 2014) (quoting law review article for proposition that "a proceeding is 'pending' from the filing of the claim until the rendition of a final judgment"). The Sixth Circuit Court of Appeals, Black's Law Dictionary, and Wright & Miller's learned legal treatise all agree. See Williams v. Coyle, 167 F.3d 1036, 1038 (6th Cir. 1999); BLACK'S LAW DICTIONARY (6th ed. 1990) and (10th ed. 2014); Charles Alan Wright and Arthur R. Miller, et al., 4 FED. PRAC. & PROC. CIV. § 1052-1053 (4th ed. 2018). While Tennessee Supreme Court Rule 8 (the Rules of Professional Conduct) does not explicitly define "pending," Tennessee Supreme Court Rule 10 (the Code of Judicial Conduct)[4] defines pending as "a matter that has commenced" and explains that "a matter continues to be pending through any appellate process until final disposition," Tenn. Sup. Ct. R. 10, and the Tennessee Rules of Civil Procedure provide that litigation is "commenced" by "filing a complaint with the clerk of court," Tenn. R. Civ. P. 3.

Furthermore, as Hasselbring's expert Brian Faughnan has cogently explained, the Tennessee Supreme Court has in other circumstances utilized *alternative* terms such as "contemplated" or "potential" when it has intended for a Rule of Professional Conduct to apply outside of the context of an already-filed action. (See Doc. No. 70-2 at ¶¶ 24-30 (citing RPC 1.8(e) ("in connection with pending *or* contemplated litigation") (emphasis added); RPC 3.4, cmt. 2 ("a pending proceeding *or* one whose commencement can be foreseen") (emphasis added); RPC 5.5(c) & cmt. 12 ("pending *or* potential proceedings") (emphasis added); RPC 8.5, cmt. 4 (*contrasting* "conduct relating to a proceeding pending before a tribunal" with "conduct in anticipation of a proceeding not yet pending before a tribunal")). It is apparent that the Tennessee Supreme Court knows well how to craft rules regarding not-yet-filed cases and filed cases, and Rule 1.10(d)

---

[4] The Tennessee Supreme Court has explained that the Rules of Professional Conduct and the Code of Judicial Conduct should each be understood in light of each other. Hancock, 447 S.W.3d at 851.

governs only filed – i.e., "pending" – cases. Federal courts have therefore applied Rule 1.10(d) in situations where complaints had actually been filed before the attorney switched firms. See, e.g., Munson Hardisty, LLC, 2017 WL 2345571, at *2 (complaint was filed and attorney participated in strategic conferences and a deposition before switching firms).

State v. Smith, 436 S.W.3d 751, 761 (Tenn. 2014), which was advanced at length by Vanderbilt in briefing before the Magistrate Judge, actually supports this analysis. Indeed, Vanderbilt's description of Smith in briefing to the Magistrate Judge was inadequate at best. Smith involved a Tennessee criminal statute that concerned proceedings that were "pending or in progress." Id. The court first noted that "pending" is normally *synonymous* with "in progress," and second discussed how the Model Penal Code used the terms "pending *or* about to be instituted." Id. at 762. However, the court noted that Tennessee had adopted a variant for the particular statute at issue that included the terms "pending or in progress." Although the court noted approvingly the definition of pending as "*remaining undecided; awaiting decision or settlement; unfinished*" (emphasis added), it held that, because the legislature had used "pending or in progress," the court was required to read the statute to avoid redundancy. Id. at 763. The court therefore utilized a secondary definition of "pending," to wit, impending. Id. Thus, although Vanderbilt represented to the Magistrate Judge that the Tennessee Supreme Court held "that 'pending' includes 'impending'" (Doc. No. 50 at 11), the court actually only held that "the term 'pending' *in Tennessee Code Annotated section 39–16–503* means 'impending.'" Smith, 436 S.W.3d at 763 (emphasis added). That statute, of course, has no relevance here and there is no analogous additional term in Rule 1.10(d) that would require resort to any secondary meaning of "pending."[5]

---

[5] Notably, the additional terms sometimes used by the Rules of Professional Conduct – contemplated, potential, anticipated – are the *opposite* of the additional term "in progress" used in the statute at issue in Smith. Vanderbilt's proposed understanding of "pending" would

9

The case of O'Rourke v. O'Rourke, No. M2006-01071-COA-R3-CV, 2007 WL 1815413, at *5 (Tenn. Ct. App. June 15, 2007), is also advanced by Vanderbilt to little end. In that case, the parties had filed a complaint, a divorce decree had been issued, and the court retained jurisdiction over ongoing post-divorce proceedings such as custody disputes. Id. The court found that the case was still pending and concluded that the lawyer had switched teams "during the game." Id. Before the Magistrate Judge, Vanderbilt wrote that O'Rourke established that "[a] proceeding can be 'pending' even if a complaint or motion has not yet been filed, if the parties' dispute is adverse and on-going." (Doc. No. 50 at 11.) Given that a complaint *had* been filed and it was clearly an ongoing proceeding, the Court does not agree that O'Rourke stands for this proposition. Indeed, O'Rourke is consistent with the plain meaning of pending discussed above.

Vanderbilt has offered little else by the way of support for its understanding of the plain meaning of "pending." Vanderbilt's expert, Winston Evans, does not advance Vanderbilt's position on the meaning of "pending" at all. (See Doc. No. 73-1.) Vanderbilt suggests a non-legal source, the Oxford English Dictionary ("OED"), but it is of no assistance. The main definition of "pending" offered by the OED is "awaiting decision or settlement," with the sample usage of "*nine cases were still pending*." See en.oxforddictionaries.com/definition/pending (emphasis added) (last accessed July 19, 2018). Only an alternate definition is "about to happen; imminent." Id. Vanderbilt's additional reference to the non-legal Cambridge Dictionary ("CD") likewise underwhelms. The CD lists several definitions for pending, but the "business English" definition is "waiting to be decided or approved," with the sample usage of "*the appeal is still pending.*" See

---

therefore make language in the other Rules of Professional Conduct cited above by Mr. Faughan redundant. For example, under Vanderbilt's understanding of "pending," the reference in Rule 5.5(c) & cmt. 12 to "pending or potential proceedings" would mean "potential or existing or potential proceedings" – a nonsensical result.

https://dictionary.cambridge.org/us/dictionary/english/pending (emphasis added) (last accessed July 19, 2018). This is not sufficient to alter the plain meaning of "pending" in the Tennessee legal context discussed above.

Vanderbilt has also cited several cases involving Tennessee's Open Matters Act. However, those cases do not supplant the Tennessee Supreme Court's pronouncement as to when litigation becomes "pending." For example, one of the cases Vanderbilt cites – <u>Putnam Cty. Educ. Ass'n v. Putnam Cty. Comm'n</u>, 2005 WL 1812624, at *8 (Tenn. Ct. App. Aug. 1, 2005) – observes that "[t]he Open Meetings Act may not, however, restrict the commission from conferring in private with its legal counsel concerning pending *or* threatened litigation." The court found no violation of the Act because County Commissioners had met with counsel in private when it was "undisputed" that litigation "*had been threatened*." <u>Id</u>. at *9. In other words, the court found that the "threatened" part of the exception had been satisfied. If the meaning of "pending" encompassed "impending," the "pending or threatened litigation" exception to the Open Matters Act would be redundant.

Finally, Vanderbilt has not explained how its definition of "pending" could even be measured. That is, how could it be determined, for imputation purposes, when a proceeding really became "impending"? A definition without any quantifiable meaning is no definition at all; the "narrow exception" of Rule 1.10(d) could swallow Rule 1.10(c) whole.

Vanderbilt also makes extended argument about the commentary to the Rules of Professional Conduct. However, "the text of each Rule is authoritative." Tenn. Sup. Ct. R. 8, Preamble and Scope ¶ 23. Regardless, Vanderbilt's argument concerning the commentary is mostly aimed at policy and purpose (as it was before the Magistrate Judge); regarding the *plain meaning* of "pending," it is not much more than a gloss. Vanderbilt highlights commentary that

states Rule 1.10 "restates the rule of law established by Clinard v. Blackwood, 46 S.W.3d 177 (Tenn. 2001)." RPC 1.10 cmt. 9. However, the commentary further states: "In that case, the Tennessee Supreme Court held that screening mechanisms were generally not effective to avoid imputed disqualification of a law firm when a lawyer was perceived as "switching teams" *in the course of pending litigation*." Id. And, indeed, in Clinard, the Tennessee Supreme Court did examine a situation in which a lawyer's firm stood as adversary against the lawyer's former client "*in the very litigation* in which [the lawyer] once represented them and gained their confidences." Clinard, 46 S.W.3d at 188. Neither the commentary nor Clinard serve to broaden the plain meaning of "pending."[6]

The Court is not applying abnormally "strict construction," as Vanderbilt suggests, but adherence to the unambiguous plain meaning of "pending." The Court recognizes the Magistrate Judge's desire to give life to the policy concerns of Clinard and its progeny. However, it was contrary to law for the Magistrate Judge to rely on "the purposes behind the rule" where the plain meaning was sufficient. (Doc. No. 67 at 9.) Vanderbilt contends that the Court's understanding of Rule 1.10(d) explained herein would have "absurd results" – namely, that an attorney could be substantially involved in a matter until shortly before a complaint was filed and then switch to a firm representing an adverse party without consequence. But this would essentially elevate the exception of Rule 1.10(d) over the general rule, which provides for screening procedures, and it cannot be the case for two reasons. First, there *would* be consequences – specifically, the attorney who switched firms shortly before a complaint was filed would be "out of the game," disqualified

---

[6] Neither does Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263 (7th Cir. 1983), which is cited in Clinard. That case involved prior representation in a corporate transaction, not an adjudicative proceeding, and thus would not have satisfied Rule 1.10(d)(2) and disqualification would not have been required.

12

from participating in the litigation, or sharing information with anyone else was involved in it, by Rule 1.10(c). Second, this position assumes that the attorney who "switched sides" *would* seek to violate the screen and participate in the litigation behind the scenes with the participation of his new colleagues. However, under the Rules of Professional Conduct, attorneys are expected to honor their oaths and follow their ethical obligations, and firms are expected to properly implement and adhere to their ethical screens. Vanderbilt's position would undermine the ethical screen process without justification in law.

The Court realizes, as did the Magistrate Judge, that litigation does not occur in a vacuum, and that the Rules of Professional Conduct, to some degree, concern themselves with the perceptions of the public. The Court further acknowledges that plain meaning of Rule 1.10(d)(3) may result in some "perception of an unfair game." (Id.) And it may even appear somewhat unseemly for Neal & Harwell to have accepted the representation of Hasselbring given its recent hire of Mr. Richards. Nevertheless, based upon Rule 1.10(d), the Court disagrees with the conclusion that "the existence of an actual lawsuit is not a condition precedent to the application of the rule." (Id. at 8.) Rule 1.10(d) is a narrow exception, and the Court finds that all of the unambiguous requirements of Rule 1.10(d) have not been met when: (1) Mr. Richards began working at Neal & Harwell on January 2, 2018; (2) the Complaint was filed on January 16, 2018; and (3) Neal & Harwell was first contacted about representing Hasselbring on January 18, 2018.

Accordingly, Neal & Harwell's Objections are **SUSTAINED** and the R&R (Doc. No. 67) is **SET ASIDE**. Given that there are no other allegations of malfeasance (i.e., Mr. Richards' personal conflict was promptly disclosed, no confidential information has been shared by Mr. Richards, and a satisfactory screen has been implemented), and that Vanderbilt does not contend there has been any actual violation of attorney confidences by Mr. Richards, the Motion to

Disqualify Neal & Harwell from the Representation of Defendant Hasselbring (Doc. No. 49) is **DENIED**. The Joint Motion for Leave to File Under Seal (Doc. No. 37) is **GRANTED** and the Motion for Leave to File Document Under Seal (Doc. No. 56) is **GRANTED**. The Court will consider the Partial Motion to Dismiss in due course.

    IT IS SO ORDERED.

                                                    _____
                                                  WAVERLY D. CRENSHAW, JR.
                                                  CHIEF UNITED STATES DISTRICT JUDGE