IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **VANDERBILT UNIVERSITY** | ) | |
|     Plaintiff, | ) | |
| v. | ) | **CASE NO. 3:18-cv-00046** |
| | ) |  Chief Judge Crenshaw |
| **SCHOLASTIC, INC. et al.** | ) | Magistrate Judge Frensley |
|     Defendants. | ) | |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(2), the parties, Vanderbilt University ("Plaintiff" or "Vanderbilt") and Scholastic, Inc. ("Scholastic"), Houghton Mifflin Harcourt Publishing Company ("HMH"), and Ted. S. Hasselbring ("Hasselbring") (collectively, "Defendants"), by and through their respective counsel, hereby submit this Proposed Initial Case Management Order for the Court's review and approval.

    **A.    JURISDICTION:**

The Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. Further, this is an action for Declaratory Judgment in a case of actual controversy pursuant to 28 U.S.C. § 2201. This Court has original or supplemental jurisdiction over the subject matter of Plaintiff's common law claims for relief under 28 U.S.C. §§ 1338(b) and 1367. The Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. § 1400(a). Defendants have received service of process.

    **B.    BRIEF THEORIES OF THE PARTIES:**

*For Plaintiff:*

By and through his employment with Vanderbilt and as a work for hire pursuant to

Vanderbilt's policies, Defendant Hasselbring developed the intellectual property behind one of the most successful products ever brought to market in the educational technology industry, "Read 180," which helps children and teenagers reading below grade level to obtain reading literacy and competency. In 1997, Vanderbilt and Defendant Scholastic entered into an agreement whereby Vanderbilt licensed its intellectual property to Scholastic to permit the commercial development and availability of Read 180 and any developments thereto or products derived therefrom (the "License"). In exchange, Scholastic was to pay escalating royalties on net sales as outlined in the License.

In 2015, Scholastic requested and Vanderbilt granted consent to assign the License to Defendant HMH as part of HMH's acquisition of Scholastic. Incident to the sale, Scholastic and HMH made public representations that sales related to Read180 had been much higher than the royalties paid to Vanderbilt would indicate. Vanderbilt then exercised its audit rights under the License to determine whether Scholastic/HMH had paid all royalties due.

As a result of the audit completed on June 9, 2016 and Vanderbilt's own investigation, Vanderbilt has determined that Scholastic and HMH have failed to pay Vanderbilt an estimated $30,000,000 in royalties from the sale of Read 180 and any developments thereto or products derived therefrom (the "Derivative Products"), pursuant to the License. Moreover, upon information and belief, Scholastic, HMH and Hasselbring, surreptitiously and in violation of the License and Hasselbring's duties and obligations to Vanderbilt as a faculty member, conspired to enter into additional agreements (without disclosing them to Vanderbilt) to develop and exploit additional learning products contemplated by the License (the "Ancillary Products") for the purpose of avoiding the payment of legally owed royalty payments to Vanderbilt.

Vanderbilt has filed this action to remedy Scholastic and HMH's repeated breaches of the

2

Case 3:18-cv-00046   Document 93   Filed 09/25/18   Page 2 of 9 PageID #: 1991

License, to assert Vanderbilt's ownership in the Derivative and/or Ancillary Products, and to obtain Vanderbilt's rightful share of the monies earned by Defendants through the sale and distribution of Read 180, and the Derivative and/or Ancillary Products. Further, Defendants have unlawfully used Vanderbilt's goodwill and trademarks to market the Derivative and/or Ancillary products without Vanderbilt's permission or approval and without accounting to Vanderbilt for their use and Vanderbilt seeks recovery for such infringements. And finally, Vanderbilt seeks damages for fraud, unfair competition, breach of fiduciary duty, and unjust enrichment, and for all other relief to which it is entitled for the claims set forth in the Complaint.

### *For Defendants Scholastic and HMH:*

More than twenty years ago, Vanderbilt entered into a license agreement with Scholastic that conveys rights to certain copyrightable software developed by Vanderbilt and Hasselbring that were used, along with materials licensed from other third parties and materials created by Scholastic, to develop a successful educational program known as Read 180. Scholastic distributed Read 180 and paid Vanderbilt the royalties it owed under the License until 2015, when it sold part of its business to defendant HMH. In connection with that sale, and with Vanderbilt's consent, Scholastic assigned the License to HMH. Since then, HMH has distributed Read 180 and paid the royalties owed.

After the sale, Vanderbilt conducted an audit which concluded—incorrectly—that it is owed additional royalties based on a misinterpretation of which components of Read 180 (and whether components of certain other programs such as Math 180 and System 44) are royalty-bearing under the License. Based upon those erroneous conclusions, Vanderbilt alleges that Scholastic and HMH breached the License. Vanderbilt also offers an alternate (but also misguided) theory: if the programs other than Read 180 are not covered by the License, then

3

Vanderbilt owns an unspecified interest in, and is entitled to compensation for, those products to the extent they incorporate any contribution made by Hasselbring. Scholastic and HMH will show why Vanderbilt's interpretation of the License is incorrect, that its allegations about the nature of Hasselbring's contributions to programs other than Read 180 are untrue, and that Scholastic and HMH have paid all of the royalties owed to Vanderbilt (and more) at a later stage of proceedings.

In the meantime, Scholastic and HMH have moved to dismiss the host of additional claims (Counts II-IV and VII-XI) that Vanderbilt has asserted against Scholastic and HMH, including those for: (1) a declaratory judgment, (2) trademark infringement or unfair competition, (3) tortious interference, (4) deceptive trade practices under the Tennessee Consumer Protection Act, (5) fraud, (6) unjust enrichment, and (7) an accounting. These claims are legally deficient and unnecessarily complicate what is otherwise a straightforward contract dispute. For the reasons set forth in Scholastic and HMH's motion, these additional claims should be dismissed with prejudice.

### *For Defendant Hasselbring*

Hasselbring denies that Vanderbilt has any viable claim against him. Either orally or through written submissions, Hasselbring disclosed his involvement as a consultant in the development of the software program at issue to Vanderbilt throughout all relevant time periods. Thus, Vanderbilt was actually aware of the matters it now complains were hidden from it. This both defeats Vanderbilt's fraud claim and bars most of Vanderbilt's other claims under the statute of limitations. And, regardless, Vanderbilt suffered no damages from its alleged reliance.

Further, despite Vanderbilt's claims to the contrary, Hasselbring was a mere consultant in connection with the creation of the software programs at issue. His contributions did not rise to

4

the level of joint authorship, as would be necessary for these programs to belong to Vanderbilt, in whole or in part, as works made for hire. Accordingly, Hasselbring denies Vanderbilt's claims for breach of contract, breach of fiduciary duty, and unjust enrichment, all are which are built upon this work made for hire premise. In addition, Vanderbilt's unjust enrichment claim seeks merely to enforce Vanderbilt's supposed rights as a copyright owner, and is therefore precluded by the Copyright Act, 17 U.S.C. § 301.

**C. ISSUES RESOLVED:** The parties do not dispute personal jurisdiction, venue, or that Defendants have received service of process.

**D. ISSUES STILL IN DISPUTE:** The issues that remain to be resolved are those raised in the motions to dismiss certain claims filed by defendants Scholastic/HMH and by defendant Hasselbring as well as issues relating to liability and damages with respect to claims that remain following disposition of the pending motions.

**E. INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before **October 12, 2018.**

**F. CASE RESOLUTION PLAN AND JOINT ADR REPORTS:** Within 120 days of the Initial Case Management Conference, the parties shall conduct an in-person meeting to discuss settlement. A representative of Plaintiff and representatives of Defendants with full settlement authority shall participate in the settlement conference, and may participate telephonically, but must still participate for the entire duration of the settlement conference. (Local counsel for the parties shall meet in person, even if out of town counsel and/or their client representatives participate telephonically.). By no later than **February 1, 2019**, the parties shall submit a joint case resolution report confirming that the parties made a first good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist

resolution of this case. The parties shall conduct a second in-person meeting to attempt to settle this case before the deadline for filing dispositive motions. A representative of Plaintiff and representatives of Defendants with full settlement authority shall participate in the settlement 60 days before the deadline for the filing of dispositive motions, and shall either confirm the parties' second good faith attempt at case resolution or update the Court on the status of the intended second attempt. If a judicial settlement conference is requested in either joint report, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

  **G. DISCOVERY:** The parties shall complete all written discovery and depose all fact witnesses on or before August 1, 2019. The parties have agreed that neither party will propound discovery requests until Defendants' Motions to Dismiss are fully briefed. Further, the parties have agreed that any discovery requests that are propounded prior to **January 15, 2019**, shall be limited to issues that relate to Plaintiff's claims of breach of the License. No motions concerning discovery are to be filed until after counsel have spoken in a good faith effort to resolve any dispute(s). Discovery motions are to be filed in accordance with the practices of the Magistrate Judge, who will resolve all disputes. All fact discovery-related motions shall be filed not later than **July 1, 2019**, and all expert discovery-related motions shall be filed not later than **January 10, 2020.**

  **H. MOTIONS TO AMEND OR TO ADD PARTIES:** Any motions to amend or to add parties shall be filed by no later than **March 1, 2019**. Any motion to amend must be accompanied by a proposed amended pleading, which should be appended as an exhibit to the motion. Prior to filing the motion to amend, counsel for the moving party shall also discuss the

6

Case 3:18-cv-00046   Document 93   Filed 09/25/18   Page 6 of 9 PageID #: 1995

proposed amendment with opposing counsel, and shall state in the motion whether the motion is opposed.

**I.	DISCLOSURE OF EXPERTS:** The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **September 16, 2019**. Defendants shall identify and disclose all expert witnesses and expert reports on or before **October 18, 2019**. Rebuttal experts shall be permitted only by leave of court. Unless otherwise provided for in a separate pretrial order, supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e). Supplemental expert opinions or other expert disclosures not timely disclosed may be excluded at trial. See Local Rule 39.01(c)(6.d).

**J.	DEPOSITIONS OF EXPERT WITNESSES:** All experts shall be deposed by no later than **January 31, 2020**.

**K. SUBSEQUENT CASE MANAGEMENT CONFERENCE:** A subsequent case management conference by telephone shall be held on **July 16, 2019**, at 10:00 a.m. to address: status of discovery (including any discovery issues or disputes); prospect for settlement (including propriety of ADR); and, any other appropriate matters. Plaintiff's counsel to initiate.

**L.	DISPOSITIVE MOTIONS:** Dispositive motions shall be filed by no later than **March 16, 2020**. Responses to dispositive motions shall be filed within 35 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages, without leave of court. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 10 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment

7

motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

**M. ELECTRONIC DISCOVERY:** The parties anticipate reaching an agreement on how to conduct electronic discovery on or before **October 31, 2018**. Administrative Order No. 174-1 therefore need not apply to this case. However, in the absence of an agreement, the default standards of Administrative Order No. 174-1 will apply.

**N. MODIFICATION OF CASE MANAGEMENT ORDER:** Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(d)(2.f) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for modifications should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4). Notwithstanding the foregoing, the parties shall not be required to make a motion for an agreed-to modification or extension of any of the interim deadlines set forth in this Order that do not in any way affect the deadlines for dispositive motions or the trial date.

O. **REQUESTS TO SEAL DOCUMENTS OR PORTIONS OF DOCUMENTS:** Any party requesting that documents or portions of documents be sealed, including without limitation for use as exhibits at trial, must file a motion to seal in accordance with Section 5.07 of Administrative Order No. 167 (Administrative Practices and Procedures for Electronic Case Filing) and Local Rule 7.01, which demonstrates compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, even if unopposed, must specifically analyze in detail, document by document, the propriety of secrecy, providing factual support and legal citations. Generally, only trade secrets or other competitively sensitive business information, information covered by a recognized privileges (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access. Failure to comply with these procedures or to provide sufficiently a compelling reason may result in denial of the request to seal documents or portions of documents. Protective orders should not provide that documents produced in discovery and designated as "confidential" will be automatically sealed upon filing or if used at trial. Any such language in proposed protective orders will be stricken and may result in denial of the motion for entry of the proposed protective order.

P. **ESTIMATED TRIAL TIME AND TARGET TRIAL DATE:** The jury trial of this action is expected to last approximately **seven (7)** days. A trial date no earlier than **October 6, 2020** is respectfully requested.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**