# Frankfurt Kurnit Klein + Selz

Edward H. Rosenthal

488 Madison Avenue, New York, New York 10022

T (212) 826 5524    F (347) 438 2114

erosenthal@fkks.com

June 13, 2019

**VIA ECF**

Hon. Jeffery S. Frensley
United States Magistrate Judge
Middle District of Tennessee
801 Broadway, Room 800
Nashville, TN 37203

      Re:    <u>Vanderbilt University v. Scholastic, Inc., et al.</u>, No. 3:18-cv-00046

Dear Judge Frensley:

Pursuant to Rule III.D.4 of Your Honor's Practices and Procedures Manual and Local Rule 37.01(b), counsel for Defendant Scholastic, Inc. ("Scholastic") and Plaintiff Vanderbilt University ("Vanderbilt") submit this joint letter outlining a discovery dispute that has arisen concerning certain interrogatories served by Scholastic. Counsel conferred in writing prior to filing this joint letter and also participated in a telephone call with respect to these issues on May 20, 2019.

In 1997, Scholastic entered into a license agreement (the "License") with Vanderbilt, which allowed Scholastic to develop an educational literacy program called Read 180.[1] This case involves, *inter alia,* Vanderbilt's claim that Scholastic failed to account for or pay royalties on: (1) components of Read 180 that were allegedly royalty bearing under the License; (2) products other than Read 180 that were allegedly based on "technology, intellectual property, know how, and educational concepts owned by Vanderbilt" and licensed to Scholastic ("Derivative Products"); and (3) additional products that may have been developed by Scholastic and defendant Ted Hasselbring in violation of the License and Hasselbring's duties to Vanderbilt ("Ancillary Products"). The disputed interrogatories relate to Scholastic's attempts to require Vanderbilt to identify the specific "technology, intellectual property, know how, and educational concepts owned by Vanderbilt" that allegedly formed the basis of the Derivative Products (Interrogatory Nos. 1. 3 & 5), and to identify the specific Derivative and Ancillary Products that form the basis of its claims (Interrogatory Nos. 6, 7 & 8). The parties' positions on these two categories of disputed interrogatories are set forth below.

---

[1] A copy of the License and Exhibit A thereto was filed by Vanderbilt in this action under seal. *See* Dkt. No. 11.

Hon. Jeffery S. Frensley
United States Magistrate Judge
June 13, 2019
Page 2

I.    **Interrogatories Nos. 1, 3 & 5:  the Intellectual Property Owned and Licensed by Vanderbilt**

A.  **The Requests and Responses to Interrogatories Nos. 1, 3 & 5**

<u>Interrogatory No. 1:</u> **To the extent You allege in paragraph 26 of the Complaint that "certain key academic concepts and techniques that formed the pedagogical basis for the Literacy Unit that were set out in an exhibit to the License" were licensed to Scholastic and/or HMH, identify and describe in detail each specific academic concept and technique that you allege was licensed.**

<u>Vanderbilt Response:</u> The key academic concepts and techniques that formed the pedagogical basis for the Literacy Unit are described in Exhibit A to the License Agreement Between Vanderbilt University and Scholastic, Inc. executed on January 1, 1997 ("License") and, pursuant to Sections 6.2 & 9 of the License, include all materials and products using, based on, or derived from the concepts and techniques described in Exhibit A.

<u>Interrogatory No. 3:</u> **To the extent You allege in paragraph 12 of the Complaint that certain "technology, know how, and educational concepts owned by Vanderbilt and developed by Vanderbilt professor Hasselbring . . . . were licensed to Scholastic and/or HMH," identify and describe in detail each specific educational concept, know how and technology that Vanderbilt alleges it licensed to Scholastic and/or HMH.**

<u>Vanderbilt Response:</u> The key academic concepts and techniques that formed the pedagogical basis for the Literacy Unit are described in Exhibit A to the License and, pursuant to Sections 6.2 and 9 of the License, include all materials and products using, based on, or derived from the concepts and techniques described in Exhibit A.

<u>Interrogatory No. 5:</u> **To the extent not identified in response to Interrogatories Nos. 1 and 3, identify and describe in detail any intellectual property or other tangible or intangible property of Vanderbilt that was licensed to Scholastic and/or HMH.**

<u>Vanderbilt Response:</u> The key academic concepts and techniques that formed the pedagogical basis for the Literacy Unit are described in Exhibit A to the License and, pursuant to Sections 6.2 and 9 of the License, include all materials and products using, based on, or derived from the concepts and techniques described in Exhibit A.

B.  **The Parties' Positions Regarding Interrogatories Nos. 1, 3 & 5**

<u>Scholastic's Position:</u> The Amended Complaint alleges, *inter alia*, that Scholastic and/or HMH have failed to pay royalties on products that were "derived from or based on" certain technology, intellectual property, know how, and educational concepts owned by Vanderbilt and

licensed to Scholastic (and later assigned to HMH). *See* Dkt. No. 85 ("Am. Compl.") ¶ 12; *see also id.* ¶ 26 (defining licensed materials as including "certain key academic concepts and techniques that formed the pedagogical basis for the Literacy Unit that was set out in an exhibit to the License."). Interrogatory Nos. 1, 3 & 5 seek the identification and description of this "technology, intellectual property, know-how and educational concepts." Vanderbilt's reference to Exhibit A of the License is insufficient.

The License defines the licensed materials as: (1) software created and owned by Vanderbilt's Learning Technology Center ("LTC"), (2) three "literacy units" contained in interactive multimedia CD-ROMs that the LTC created; and (3) a written description of certain key academic concepts and techniques that form the pedagogical basis for those literacy units "as described in Exhibit A." As to the "key academic concepts and techniques" described in Exhibit A, Vanderbilt alleges not just that it licensed the written description to Scholastic, but that it owns the "academic concepts" and techniques" themselves. However, Exhibit A, is a twenty-five page document that refers to and incorporates the research of dozens of authors unaffiliated with Vanderbilt and is supported by pages of citations to scholarly works mostly written by authors unaffiliated with Vanderbilt, some of whom were themselves contributors to other products published by Scholastic or co-defendant Houghton Mifflin Harcourt Publishing Company ("HMH"). Even the references to Dr. Hasselbring's work in Exhibit A include some of the scholarship he published prior to any affiliation with Vanderbilt.

In light of Vanderbilt's misguided allegations that it owns not merely the written description of concepts and techniques in Exhibit A, but the underlying concepts and techniques themselves, Scholastic needs to know what precisely Vanderbilt claims to own. Given that the questions of what Vanderbilt actually owns are central to determining whether defendants have violated Vanderbilt's rights, these interrogatories asking Vanderbilt to identify concepts, techniques, technology, know-how, educational concepts, and intellectual or other property that it contends it owns are relevant to the claims and defenses at issue and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Vanderbilt's bare reference to Exhibit A of the License does not "fully" respond to Scholastics interrogatories as required by Federal Rule of Civil Procedure 33(b)(3). *See South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, No. 3:15-CV-151-CRS, 2017 WL 9285424, at *2 (W.D. Ky. Jan. 5, 2017) (referring to a list of documents was insufficient given Rule 33(b)(3)'s requirement to answer each interrogatory "fully" (collecting cases)).

Vanderbilt's Position:

Vanderbilt continues to maintain that the best and most fulsome description of what was licensed to Scholastic (and later assigned to HMH) is found in the parties' License and Exhibit A to the License. The License and Exhibit A has been filed in this action under seal. *See* Dkt. No. 11. The parties described what was being licensed under the grant in the parties' agreement as the "Materials," which would then be used to produce the Literacy Program (defined at ¶ 1.5),

Hon. Jeffery S. Frensley
United States Magistrate Judge
June 13, 2019
Page 4

"together with any courseware in film, videodisc, videotape format, or in written or other appropriate form." *See* License at 2.1. "Materials" is a defined term in the License (at ¶ 1.6), and is comprised of the Software (defined at ¶ 1.1), LTC Literary Units (defined at ¶ 1.4), and key academic concepts described in Exhibit A of the License. The original Software was entitled "The Peabody Middle School Literacy Program" and used libraries of information to deliver interactive multimedia lessons in literacy. *See* Recitals and ¶ 1.1. Exhibit A then provides an extremely detailed description of how the Software works and how it synthesizes and uses academic research and concepts to help children learn to read.

As set forth in Exhibit A, the Software organized and combined academic research from multiple sources in an integrated way to create a new teaching tool that provided students with instruction and practice in three areas of literacy which included the reading and comprehension of connected text; automatic word recognition; and orthographic knowledge and phonological processing skills. The instruction that was provided in the Software used a contextualized approach to literacy where video provided the students with a meaningful context for learning and applying the skills that were learned. As set out in Exhibit A, "[t]he underlying pedagogy was a hybrid that used direct or explicit instruction for teaching automatic work recognition as well as orthographic knowledge and phonological processing skills. In addition, the pedagogy incorporated a much more constructivist approach to learning by contextualizing all of the instruction around the video contexts."

In short, Vanderbilt personnel managed to synthesize multiple academic concepts into a working literacy program that collected data on the student and provided it to the teacher for further analysis and instruction. Exhibit A describes how the Vanderbilt Software accomplished this and provides an appropriate answer to any Interrogatory seeking a description of exactly what Vanderbilt licensed to Scholastic.

## II. Interrogatories Nos. 6, 7 & 8: the Ancillary and Derivative Products at Issue

### A. The Requests and Responses to Interrogatories Nos. 6, 7 & 8

**Interrogatory No. 6: Identify each of the "Derivative Products" as defined in the Complaint and describe in detail how each Product is "related to or are derived from the Read 180 Materials" as alleged in paragraph 77 of the Complaint.**

Vanderbilt Response: Vanderbilt objects to this Interrogatory to the extent that it is premature in seeking information regarding matters about which discovery is ongoing. Therefore, Vanderbilt expressly reserves the right to supplement its response to this Interrogatory as relevant evidence is uncovered.

**Interrogatory No. 7:** Identify each of the "Ancillary Products" as defined in the Complaint and describe in detail each element of the "confidential Read 180 Materials conveyed. . . through the License" that you allege were incorporated into the Ancillary Products in paragraph 118 of the Complaint, and how those Materials were incorporated into the Ancillary Products.

**Vanderbilt Response:** Vanderbilt objects to this Interrogatory to the extent that it is premature in seeking information about matters about which discovery is ongoing. Therefore, Vanderbilt expressly reserves the right to supplement its response to this Interrogatory as relevant evidence is uncovered.

**Interrogatory No. 8:** Identify and describe in detail each element of "additional confidential Vanderbilt Technology and Intellectual Property" that You allege was conveyed to Scholastic and/or HMH outside the License and incorporated into the Ancillary Products as alleged in paragraph 118 of the Complaint and how that Technology and Intellectual Property was incorporated into the Ancillary Products.

**Vanderbilt Response:** Vanderbilt objects to this Interrogatory to the extent that it is premature in seeking information regarding matters about which discovery is ongoing. Therefore, Vanderbilt expressly reserves the right to supplement its response to this Interrogatory as relevant evidence is uncovered.

### B. The Parties' Positions Regarding Interrogatory Nos. 6, 7 & 8

Scholastic's Position: These interrogatories seek the identification and description of the Derivative and Ancillary Products that form the basis of Vanderbilt's claims, and the identification and description of certain "additional confidential Vanderbilt Technology and Intellectual Property" that Vanderbilt alleges was conveyed to Scholastic and/or HMH outside of the License and was allegedly incorporated into the Ancillary Products. *See* Am. Compl. ¶¶ 77, 118. Vanderbilt has refused to answer these interrogatories, instead objecting on the grounds that they are "premature in seeking matters about which discovery is ongoing," and "reserv[ing] the right to supplement [the] response[s] . . . as relevant evidence is uncovered." Although the Amended Complaint refers to certain specific products other than Read 180, Vanderbilt not limited its claims to those specified products and has refused to identify the proprietary materials alleged incorporated into those products. Without that information, Scholastic is left to guess at what intellectual property Vanderbilt believes was incorporated into an indeterminate list of products.

Vanderbilt's objection that these interrogatories are premature is not a valid basis for refusing to respond. Vanderbilt brought this case asserting a host of claims arising out of what it calls the Derivative and Ancillary Products and the alleged conveyance of "confidential Technology and Intellectual Property." Although Vanderbilt is obliged to supplement its

answers if it learns additional information in discovery, Scholastic is entitled to know the basis on which Vanderbilt asserted the claims in the Amended Complaint and the present state of Vanderbilt's knowledge following a reasonable inquiry. Indeed, Count II of Vanderbilt's Amended Complaint is denominated as a "claim for declaratory judgment of ownership interest in the ancillary products." Am. Compl. at 38. Plainly, Scholastic is entitled to know which products Vanderbilt claims are "ancillary products" and which proprietary materials were incorporated into those ancillary products.

If, following a reasonable inquiry, Vanderbilt remains unable to identify the Derivative or Ancillary Products on which it is suing, how they are related to or derived from the Read 180 Materials, and the additional technology or intellectual property it alleges was conveyed, Scholastic is entitled to know that.[2] *See* Wright & Miller, 8B *Fed. Prac. & Proc. Civ.* § 2177 (2019) ("If . . . a party cannot answer an interrogatory, it is entitled to so state under oath. If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available."); *see also United States v. Blue Cross Blue Shield of Mich.*, Civil Action No. 10-14155, 2012 WL 12930840, at *5 (E.D. Mich. May 30, 2012) (interrogatories regarding the factual basis for a party's assertions were not premature).

<u>Vanderbilt's Position:</u>

Vanderbilt maintains that Interrogatories 6, 7, and 8 are contention Interrogatories that reach the ultimate issues in this case—what information did Hasselbring, Vanderbilt's employee, contribute to the Ancillary and/or Derivative Products (terms defined in the Introduction to the Amended Complaint)? At this point in the case, where Scholastic and HMH have not even answered the Amended Complaint or produced a single document and no witness has yet been deposed, Vanderbilt's response is entirely appropriate. The factual basis for the claims are set out in great detail in Vanderbilt's Amended Complaint. Vanderbilt names the products that it believes are at issue at several locations in the complaint. Am. Compl. at ¶¶ 39, 61 A-F. Hasselbring and Scholastic and/or HMH surreptitiously and in contravention of their respective contractual duties to Vanderbilt entered into multiple contracts that provide for the payment of six and seven figure royalty payments to Hasselbring. Scholastic and/or HMH then touted Hasselbring as the "author" of numerous products, none of which Vanderbilt was made aware or

---

[2] The basis on which Vanderbilt asserted these claims is relevant not just to the merits, but also to Scholastic's statute of limitations defense. To the extent that Vanderbilt has identified products other than Read 180 in the Amended Complaint, most of those products have been available for years, and Dr. Hasselbring's involvement with them was previously disclosed to Vanderbilt. Scholastic is entitled to use discovery to explore the state of Vanderbilt's knowledge throughout the relevant period. As a result, these interrogatories are directly relevant to the claims and defenses at issue and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

for which it received any royalties. Vanderbilt is undertaking discovery to determine what Hasselbring contributed to each of these products but has not yet received satisfactory answers at this juncture of the case. Hasselbring either contributed new IP to one or more of the products, which would belong to Vanderbilt under its various employment policies and/or the product is derived from or based on the software, materials, and/or combination of key academic concepts and techniques that form the pedagogical basis for what was licensed to Scholastic under the Read 180 License. Vanderbilt will seasonably supplement its responses to these Interrogatories as required under the Rules of Civil Procedure as discovery develops.

Respectfully submitted,

Edward H. Rosenthal

cc: All Counsel (via ecf)