# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| VANDERBILT UNIVERSITY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:18-cv-00046 ) |
| SCHOLASTIC, INC., et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Vanderbilt University and Scholastic, Inc. entered into a License Agreement in 1997 granting Scholastic the right to develop, market, and sell the Read 180 literacy program developed at Vanderbilt by Professor Ted Hasselbring. Years later, Vanderbilt brought this action alleging that it had not been properly compensated based upon sales of Read 180 and sales of certain other products developed in violation of the License Agreement. Defendants Hasselbring, Scholastic, and Scholastic's successor-in-interest Harcourt Mifflin Harcourt Publishing Company filed motions to dismiss, which the Court granted in part and denied in part. (Doc. No. 113.) Hasselbring and Scholastic subsequently filed Counterclaims.[1] Pending before the Court is Vanderbilt's Motion to Dismiss Scholastic's Counterclaim. (Doc. No. 137.) The motion will be granted in part and denied in part.

---

[1] Vanderbilt moved to dismiss (Doc. Nos. 124, 126) Hasselbring and Scholastic's initial counterclaims (Doc. Nos. 111, 116). Hasselbring and Scholastic filed Amended Counterclaims (hereinafter "Counterclaims"). (Doc. Nos. 129, 130.) Vanderbilt's motions to dismiss will be denied as moot.

I.  Legal Standard

To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007). Here, the Court construes the Amended Counterclaim in the light most favorable to the non-moving party, accepts its allegations as true, and draws all reasonable inferences in favor of the nonmoving party. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002). However, the Court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999); Lillard v. Shelby Cty. Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

II.  Counterclaim Allegations

Scholastic alleges that under the License Agreement,[2] it agreed to pay royalties on certain products derived from the Read 180 materials licensed by Vanderbilt. (Doc. No. 130 ¶ 6.) Under Section 9.1(a) of the License Agreement, which Scholastic alleges is "valid and enforceable," Scholastic agreed to pay Vanderbilt royalties on the net sales of certain products. (Id. ¶¶ 7, 15.) Section 9.1(a) of the License Agreement requires that Scholastic pay Vanderbilt "5% of Net Sales

---

[2] In resolving the Motion to Dismiss, the Court considers the License Agreement, which is integral to the Amended Counterclaim and filed of record, without converting the motion into one for summary judgment. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007).

from such sales or licenses until such time as cumulative Gross Sales from such products total $15 million, after which time Vanderbilt shall forever be paid 7% of Net Sales." (Id. ¶ 12.) "Net Sales" is defined in Section 1.7 as "all income received by Scholastic from the sale, licensing, or other use of the Materials or Literacy Program, computed annually, less: (a) cash, trade, or quantity discounts[,] (b) shipping and handling costs, taxes, including sales taxes and duties, (c) credits, returns and replacements[, and] (d) a reasonable reserve for returns." (Id. ¶ 13.)

Scholastic avers that it mistakenly paid royalties to Vanderbilt on various products that were not subject to royalty payments. (Id. ¶¶ 8, 16.) It claims that these payments were based "on a mistake of fact, namely the amount of royalties actually owed . . . under Sections 1.7 and 9.1(a) of the License Agreement." (Id. at ¶ 17.) Scholastic alleges Vanderbilt improperly retained those payments, and that it "has a right to recoup any royalties it overpaid to Vanderbilt and to offset any damages awarded in favor of Vanderbilt in this action by the amount of such overpayments." (Id. ¶¶ 9, 18.)

Scholastic brings three alternative Counterclaims to recover royalty overpayments: breach of Sections 1.7 and 9.1(a) of the License Agreement (id. ¶ 19); breach of the implied covenant of good faith and fair dealing (id. ¶¶ 23-26); unjust enrichment (id. ¶¶ 29-32). Scholastic seeks reimbursement of the alleged amount of overpayment, regardless of the theory of liability. (Id. (prayer for relief)).

III. Analysis

A. Contract Counterclaims

Vanderbilt argues that Scholastic's breach of contract counterclaim must be dismissed because the License Agreement "places obligations only on Scholastic, not Vanderbilt," and the License Agreement does not require Vanderbilt to return alleged overpayments. (Doc. No. 138 at

3

4-7.) Scholastic relies on Sections 1.7 and 9.1(a) on royalty payments, and argues that no express contractual language is required for it to recover overpayments. (Doc. No. 148 at 6-9.) Vanderbilt relies on the same argument for dismissal of Scholastic's breach of the implied covenant of good faith and fair dealing counterclaim. (Doc. No. 138 at 7-9.) Scholastic contends that even if the License Agreement does not explicitly require Vanderbilt to return mistaken overpayments, an implied duty claim is viable because a reasonable person in Scholastic's position would understand that Vanderbilt would be required to repay any mistaken overpayments. (Id.)

These intertwined claims are governed by New York law[3] and thus the analogous case of Orange County Choppers, Inc. v. Olaes Enterprises, Inc., 497 F. Supp. 2d 541 (S.D.N.Y. 2007) is instructive. There, as here, the defendant alleged mistaken overpayment of over $1,000,000 in royalties under a licensing agreement. Id. at 559. There, as here, the defendant sought recovery of the overpayment based upon breach of contract and breach of the implied covenant of good faith and fair dealing claims. Id. The court dismissed the breach of contract claim, but not the breach of good faith and fair dealing claim and explained:

> Although we agree that the [licensing a]greement does not include any explicit provision that provides [defendant] the right to reimbursement of overpaid royalties, "[u]nder New York law, every contract contains an implied covenant of good faith and fair dealing." Carvel Corp. v. Diversified Mgmt. Grp., Inc., 930 F.2d 228, 230 (2d Cir. 1991). "This covenant includes 'an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.'" Id. (quoting Grad v. Roberts, 14 N.Y.2d 70, 75, (1964)). "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative; however, in some cases 'a party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.'" Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05 Civ. 8510, 2007 WL 438088,

---

[3] Contract claims arising from the License Agreement are government by New York law. (Doc. No. 11 ¶ 17.)

> at *7 (S.D.N.Y. Feb. 8, 2007) (quoting Chase Manhattan Bank v. Keystone Distrib., Inc., 873 F. Supp. 808, 815 (S.D.N.Y. 1994)). "The covenant 'precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.'" Id. (quoting Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989)). "Hence, the covenant is violated 'when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." Id. (quoting Don King Prods., Inc. v. Douglas, 742 F. Supp. 741, 767 (S.D.N.Y. 1990)). . . In the present case, the [licensing a]greement obligates [defendant] to pay [plaintiff] a certain amount of royalties in consideration for a license to use its Property and does not expressly prohibit [defendant] from recovering royalties mistakenly overpaid. Thus, the [licensing a]greement's implied covenant of good faith and fair dealing prohibits [plaintiff] from retaining royalties that were provided to it by mistake and to which it is not contractually entitled. [Defendant's] claim for its alleged overpayments is thus properly termed a breach of the covenant of good faith and fair dealing, . . . and not a breach of any express provision of the contract[.]

Id. at 559-60. Other courts have followed the rationale in Orange County Choppers. See, e.g., Wiseman v. ING Groep, N.V., 16-cv-07587 (AJN), 2017 WL 4712417, at *8 (S.D.N.Y. Sept. 28, 2017); Dorset Indus., Inc. v. Unified Grocers, Inc., 893 F. Supp. 2d 395, 407 (S.D.N.Y. 2012); 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002).

As in Orange County Choppers, Scholastic does not have a claim for breach of an express contractual provision, but it does have a claim that the Licensing Agreement's implied covenant of good faith and fair dealing prohibits Vanderbilt from retaining royalties that were paid by mistake.

### B. Unjust Enrichment Counterclaim

Turning to Scholastic's unjust enrichment counterclaim, Vanderbilt seeks dismissal because such a claim is not viable when there is an enforceable contract between the parties covering the same subject matter. (Doc. No. 138 at 10-12.) Scholastic says that unjust enrichment is a viable alternative claim. (Doc. No. 148 at 12-14.)

5

Unjust enrichment is a quasi-contractual theory that imposes a contractual obligation where one does not exist.[4] Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154–55 (Tenn. 1966). An unjust enrichment claim arises when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. Id. at 154–55; see also Cry-Leike, Inc. v. Carver, 415 S.W.3d 808, 824 (Tenn. 2011). "The remedy for unjust enrichment requires that the person who has been unjustly enriched at the expense of another make restitution to that person." Chase Manhattan Bank, N.A. v. CVE, Inc., 206 F.Supp.2d 900, 909 (M.D. Tenn. 2002).

Because unjust enrichment requires the absence of a valid contract, "[i]t is true that recovery may not be had under *both* a breach of contract and an unjust enrichment theory[.]" Town of Smyrna, Tenn. v. Mun. Gas Auth. Of Ga., 2012 WL 1313340, at *13 (M.D. Tenn. Apr. 17, 2012) (emphasis added). However, "a party is allowed to plead [these as] *alternative* theories of recovery." Id. (emphasis added); see also Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Commc's Unlimited Contracting Servs., Inc. v. Comdata, Inc., 2018 WL 418566, at *2 (M.D. Tenn. Jan. 16, 2018) (explaining that unjust enrichment is an "alternative theory of recovery").[5] Scholastic has alleged, in the alternative, that Vanderbilt has been unjustly enriched. This claim will proceed.

---

[4] The parties do not dispute that Tennessee law governs this counterclaim. (See Doc. Nos. 138 at 10 n.2; 148 at 12.)

[5] This conclusion does not, as Vanderbilt suggests, contradict the Court's prior dismissal of Vanderbilt's unjust enrichment claim in this case, because that ruling was primarily on preemption grounds. (See Doc. No. 106 at 42-44 ("For these reasons, the Court finds Vanderbilt has brought an implied-in-law unjust enrichment claim concerning copyrightable subject matter. It is therefore preempted by the Copyright Act.")). In any event, Vanderbilt's unjust enrichment claim – which encompassed products "otherwise outside the License Agreement – was not pled in the alternative. (See Doc. No. 85 ¶¶ 144-146.)

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE