UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VANDERBILT UNIVERSITY, | ) | |
| | ) | Civil Action No. 3:18-cv-00046 |
| *Plaintiff*, | ) | |
| | ) | Judge Crenshaw |
| v. | ) | Magistrate Judge Frensley |
| | ) | |
| SCHOLASTIC, INC.; HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY; and TED S. HASSELBRING, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| FACTS | | 2 |
| I. | The Nature of This Dispute | 2 |
| II. | The Case Management Order | 2 |
| III. | The Parties' Expert Reports | 3 |
| IV. | Vanderbilt's Improper Attempt to Serve Unauthorized Rebuttal Reports | 4 |
| ARGUMENT | | 7 |
| I. | Vanderbilt's Experts Testimony Should Be Limited to the Opinions Contained in Their July 2020 Reports | 7 |
| II. | Vanderbilt's Breach of the Case Management Order Was Neither Substantially Justified nor Harmless | 9 |
| | A. Vanderbilt Cannot Show Substantial Justification | 10 |
| |     1. Rule 26 Does Not Save Vanderbilt | 10 |
| |     2. The Rebuttal Reports Are Not Proper Rebuttal | 11 |
| | B. Vanderbilt's Breaches of the Case Management Order Are Not Harmless | 13 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1998) ...................................................................................................11

*Estate of Barnwell v. Roane Cty., Tenn.*,
  No. 3:13 Civ. 124, 2016 WL 5938910, at *1 (E.D. Tenn. Apr. 5, 2016) ...............................13

*Bentley v. Highlands Hosp. Corp.*,
  No. 15 Civ. 97, 2016 WL 5867496 (E.D. Ky. Oct. 6, 2016) ............................................10, 11

*Covington v. Memphis Publ'g Co.*,
  No. 05 Civ. 2474, 2007 WL 4615978 (W.D. Tenn. Oct. 16, 2007) .......................................13

*Gallagher v. Southern Source Packaging, LLC*,
  568 F. Supp. 2d 624 (E.D.N.C. 2008)....................................................................................11

*Green Party of Tennessee v. Hargett*,
  No. 3:11 Civ. 692, Dkt No. 246, dated June 30, 2016 at 3 (Crenshaw, J.), *aff'd*
  No. 16 Civ. 6299, 2017 WL 4011854 (6th Cir. May 11, 2017) ...................................9, 10, 11

*Palmer v. ALDI, Inc.*,
  No. 3:07 Civ. 0596, 2008 WL 11394160 (M.D. Tenn. June 19, 2008).....................................8

*Pluck v. BP Oil Pipeline Co.*,
  640 F.3d 671 (6th Cir. 2011) ............................................................................................12, 13

*Pogue v. Northwestern Mut. Life Ins. Co.*,
  No. 3:14 Civ. 598, 2017 WL 1520431 (W.D. Ky. April 25, 2017)...........................................8

*In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*,
  No. 2:08 Civ. 2830, 2017 WL 9440795 (W.D. Tenn. Apr. 28, 2017)........................................8

*Starlink Logistics, Inc. v. ACC, LLC*,
  No. 18 Civ. 0029, 2020 WL 619848 (M.D. Tenn. Feb. 10, 2020) ...........................8, 9, 10, 11

*Ullman v. Auto-Owners Mut. Ins. Co.*,
  No. 2:05 Civ. 1000, 2007 WL 1057397 (S.D. Ohio April 5, 2007) .......................................14

*Vaughn v. City of Lebanon*,
  18 F. App'x 252 (6th Cir. 2001) ...............................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26..................................................................................................9, 10, 11, 14

Fed. R. Civ. P. 37(c) ...................................................................................................1, 9

Local Rule 37.01(b) .............................................................................................................1

Local Rule 39.01(c) ....................................................................................................... *passim*

Defendants Scholastic Inc. ("Scholastic"), Houghton Mifflin Harcourt Publishing Company ("HMH"), and Ted S. Hasselbring ("Hasselbring" and, collectively, "Defendants") submit this memorandum of law in support of their motion *in limine* to limit Vanderbilt's experts' testimony at trial to exclude any opinions raised in the rebuttal expert reports served by Plaintiff Vanderbilt University ("Vanderbilt") on October 26, 2020 (the "Rebuttal Reports"), pursuant to Fed. R. Civ. P. 37(c)(1).[1]

## PRELIMINARY STATEMENT

The Court's Case Management Order (the "CMO") and Local Rule 39.01(c)(5)(C) prohibit Vanderbilt from serving rebuttal expert reports absent leave of court. On October 26, 2020, Vanderbilt violated the CMO and Local Rules by serving what it denominates as responses to Defendants' expert reports (the "Rebuttal Reports") without seeking leave from this Court or seeking to amend the CMO. Moreover, the Rebuttal Reports are not even properly rebuttal, but are instead a transparent and impermissible attempt by Vanderbilt to bolster its initial expert reports. Permitting Vanderbilt's experts to review Defendants' expert opinions before rendering their final opinions would provide Vanderbilt with a clear and unfair litigation advantage. The Court should not allow Vanderbilt's disregard for the CMO and its attempt to secure this unfair advantage. Accordingly, and for the following reasons, the Court should exclude the Rebuttal Reports and preclude Vanderbilt's experts from testifying to opinions not timely disclosed in their initial reports.

---

[1] As this motion is a *motion in limine* to exclude trial testimony, Defendants do not believe that a joint statement is required under Local Rule 37.01(b) or Magistrate Judge Frensley's Individual Rule of Practice III(D)(4). Given that the expert depositions are currently ongoing, and summary judgment motions are due in January, Defendants believe that this is issue is ripe for resolution now, rather than at the pre-trial conference.

# FACTS

## I. The Nature of This Dispute

Vanderbilt has asserted a variety of contract and tort claims, but the core of this dispute is Vanderbilt's contention that it has been underpaid royalties owed under a license agreement dated January 1, 1997 with Scholastic (the "License") that was subsequently assigned to HMH in 2015. *See generally* Am. Compl., Dkt No. 85. Pursuant to the License, Scholastic used certain software known as the Peabody Learning Lab ("PLL") as a prototype for its development of the software component of a literacy program called *Read 180*. *See id.* Scholastic, and subsequently HMH, have distributed *Read 180* and paid royalties to Vanderbilt under the License. *See id.* Vanderbilt alleges that it is owed additional royalties on *Read 180* and also that it is also owed royalties under the License on a series of other products developed by Scholastic that Vanderbilt alleges are based on or derived from the materials licensed to Scholastic (the "Other Scholastic Products"). *See id.* Defendants deny that Vanderbilt has been underpaid under the License, that any of the Other Scholastic Products are based on or derived from licensed materials, and that Vanderbilt is entitled to any of the requested relief. *See* Dkt Nos. 115, 116; *see also* Dkt No. 111. Scholastic and Hasselbring have asserted counterclaims against Vanderbilt arising out of Vanderbilt's wrongful withholding of monies owed to those defendants. *See* Dkt Nos. 111, 116.

## II. The Case Management Order

Over two years ago, on September 24, 2018, the parties jointly submitted a Proposed Case Management Order (Dkt No. 92), which was so ordered by the Court. Dkt No. 93. As is relevant to this motion, the expert disclosure schedule in the CMO—which is identical to the provision jointly proposed by the parties (Dkt No. 92 at 7)—states:

> The Plaintiff shall identify and disclose all expert witnesses and expert reports on or before **September 16, 2019**. Defendants shall identify and disclose all expert

> witnesses and expert reports on or before **October 18, 2019**. **Rebuttal experts shall be permitted only by leave of court**. Unless otherwise provided for in a separate pretrial order, supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e). Supplemental expert opinions or other expert disclosures not timely disclosed may be excluded at trial. See Local Rule 39.01(c)(6.d).

*Id.* (emphases in original). The expert disclosure dates for both sides were later extended several times (*see* Dkt Nos. 120, 154, 171, 191, 221, 260), but the substance of this provision did not change. There can be no dispute that the CMO set a single expert report deadline for each side, and expressly foreclosed rebuttal experts without leave of court. Dkt No. 260.

## III. The Parties' Expert Reports

In accordance with the CMO, on July 17, 2020, Vanderbilt served reports from four experts: (1) Christopher M. Lovin, Vanderbilt's damages expert (the "Lovin Report"); (2) Bruce F. Webster, Vanderbilt's software code expert (the "Webster Report"); (3) Timothy Shanahan, Ph.D., Vanderbilt's pedagogy expert (the "Shanahan Report"); and (4) Matthew G. Ezell, Vanderbilt's trademark survey expert (the "Ezell Report"). *See generally* Rosenthal Decl., Exs. A-D.[2]

On September 25, 2020,[3] Defendants served their own expert reports from: (1) Laura B. Stamm, Defendants' damages expert (the "Stamm Report"); (2) Ronald S. Schnell, Defendants' code expert (the "Schnell Report"); (3) Cynthia Okolo, Ph.D., Defendants' pedagogy expert (the "Okolo Report"); and (4) Hal Poret, Defendants' trademark survey expert (the "Poret Report").

---

[2] "Rosenthal Decl." refers to the Declaration of Edward H. Rosenthal, dated November 10, 2020, and filed herewith.

[3] Plaintiff's deadline to submit the Webster Report and Defendants' deadline to submit all expert reports were briefly extended by agreement of the parties. Rosenthal Decl. ¶ 10.

*See generally* Rosenthal Decl., Exs. E-H. These reports addressed many of the failings in Vanderbilt's expert reports. By way of example only, the Poret Report re-ran a trademark survey conducted by Mr. Ezell—correcting the stimulus and an improper control employed by Mr. Ezell—and found no likelihood of consumer confusion. *Id.*, Ex. H (Poret Report) at 22-26. The Schnell Report rebutted Mr. Webster's assertions of copying in the software code of the relevant products. *Id.*, Ex. F (Schnell Report) at 6-7 ¶¶ 26-27. The Okolo Report demonstrated that the alleged pedagogical similarities between the PLL and the Other Scholastic Products could not have been licensed by Vanderbilt, as these concepts were developed years (or even decades) earlier by researchers unaffiliated with Vanderbilt (*id.*, Ex. G (Okolo Report) at 14-47), and (unsurprisingly) were present in other educational products published prior to the License. *Id.* at 48-61. The Stamm Report responded to Mr. Lovin's damages calculations. *See generally id.*, Ex. E (Stamm Report).

## IV. Vanderbilt's Improper Attempt to Serve Unauthorized Rebuttal Reports

Given the short window for expert depositions—the deadline is November 20, 2020[4]—and the unchangeable January 22, 2021 deadline for service of summary judgment and *Daubert* motions, Defendants approached Vanderbilt on September 17, 2020, about setting a schedule for expert depositions (more than a week before Defendants' expert reports were due). Rosenthal Decl., Ex. I. Vanderbilt, however, were not willing to schedule depositions until after Defendants had served their expert reports. *Id.*

---

[4] The parties have agreed to permit certain depositions to take place in the weeks immediately following this date to accommodate scheduling conflicts. These modest, consensual extensions do not affect any other dates in the CMO. Rosenthal Decl. ¶ 22.

On October 5, 2020, following service of Defendants' expert reports, Defendants again wrote to Vanderbilt in an effort to schedule expert depositions. *Id.*, Ex. J. Vanderbilt responded on October 6, 2020—two weeks after Defendants had served their expert reports—indicating for the first time that it was evaluating "the question of whether we want to submit reply expert reports" allegedly because Defendants' experts had considered information produced only in conjunction with their reports. *Id*. Vanderbilt's "evaluation" then continued for yet another week.

When Defendants again followed up on deposition scheduling on October 13, 2020, Vanderbilt indicated that it "would like to do rebuttal reports" (*id.*, Ex. K), a desire it later clarified was limited to the "Okolo, Stamm and Schnell reports." *Id.* Scholastic responded to Vanderbilt: "If you feel that there are instances where defendants' expert reports relied upon materials that were not available to plaintiff's experts at the time they filed their report, and you have a proposal as to the timing and substance of limited supplemental submissions by one or more of plaintiff's experts to address these instances, please let us know." *Id.*, Ex. L. Vanderbilt rejected Scholastic's offer, explaining that "addressing new materials cited by the defendants' experts does not resolve our concerns" and that it believed rebuttal reports were necessary to "set[] forth at least the major points where Vanderbilt's experts disagree with defendants' experts (at least where that is not clear from the initial reports)." *Id.*, Ex. M. Additionally, Vanderbilt stated that its software code expert, Mr. Webster, had done "additional work" after serving his initial report (but before reviewing Defendants' software code expert's report), which his rebuttal report would address. *Id*.

5

In light of the CMO, Defendants objected, and the parties met and conferred on October 26, 2020. *Id.* ¶ 17. Vanderbilt again announced its intention to serve rebuttal reports and offered to stipulate to sur-rebuttals by Defendants. *Id.* Defendants again objected. *Id.*

That night—and four months after its deadline to serve *all* expert reports—Vanderbilt served the Rebuttal Reports without seeking leave of the Court. *Id.*, Exs. N-Q. The Rebuttal Reports either present entirely new theories, or seek to bolster Vanderbilt's expert disclosures with new opinions that rely on information previously available to Vanderbilt. For example, the initial report from Mr. Lovin, Vanderbilt's damages expert, applied the same contractual royalty rate applicable to the software component of *Read 180* (7%) to the Other Scholastic Products, even though the License states that royalties applicable to any other software products based on or derived from the licensed materials would be, pro rata, based on the future mutual agreement of the parties as to the amount of the licensed materials incorporated into such derivative products.[5] *Id.*, Ex. A (Lovin Report) ¶ 16. Mr. Lovin's new report (the "Lovin Rebuttal Report") attempts to correct for this oversight and includes for the first time an attempt to calculate a pro rata royalty rate for derivative products and also recalculates the *Read 180* royalty pool—work that could (and should) have been done in his initial report. *Id.,* Ex. N (Lovin Rebuttal Report). The new report from Mr. Webster, Vanderbilt's software code expert (the "Webster Rebuttal Report"), criticizes the Schnell Report and attempts to justify Mr. Webster's decision in his initial report to focus on pedagogical similarities, rather than software code similarities, and purports to identify additional alleged code similarities. *Id.*, Ex. O (Webster Rebuttal Report) ¶ 17. Vanderbilt has also admitted that the Webster Rebuttal Report adds

---

[5] Defendants will show at a later stage of proceedings that this agreement to agree on future royalty streams is unenforceable under New York law, which governs the License, in any event.

opinions based on additional work performed before the service of the Schnell Report (Rosenthal Decl., Ex. M), meaning that they could not be responsive to any of Mr. Schnell's opinions. The new report from Dr. Shanahan, Vanderbilt's pedagogy expert (the "Shanahan Rebuttal Report") attempts to bolster his initial report by introducing new evidence that was previously available to him and by adjusting his theories. *Id.*, Ex. P (Shanahan Rebuttal Report) ¶ 18. Finally, despite previously indicating that its rebuttal reports would be limited to responding to the "Okolo, Stamm and Schnell reports" (*id.,* Ex. K), Vanderbilt also served a new report from Mr. Ezell (the "Ezell Rebuttal Report"). *Id.*, Ex. Q (Ezell Rebuttal Report) ¶ 19. The Ezell Rebuttal Report attempts to justify the manifold errors in his survey, primarily purporting relying on deposition testimony that was available to him, but which he apparently did not even review for his initial report. *Id*.

## ARGUMENT

### I. Vanderbilt's Experts Testimony Should Be Limited to the Opinions Contained in Their July 2020 Reports

The CMO, which was proposed by the parties (Dkt No. 92) and accepted by the Court (Dkt No. 93), sets one deadline per side for "all expert witnesses and expert reports" and allows for rebuttal "only by leave of court." *See id.* Each of the Court's six amendments to the CMO include the same provision as to the sequence of expert disclosures, and *none* of them provide for rebuttal expert reports. *See* Dkt Nos. 120, 154, 171, 191, 221, 260.

This provision is consistent with Local Rule 39.01(c)(5)(C), which states:

> Expert witness disclosures must be made timely in accordance with any order of the Court [i.e., the CMO], or if none, in accordance with Fed.R.Civ.P. 26(a)(2). *Expert witness disclosure statements may not be supplemented after the applicable disclosure deadline, absent leave of Court.* Expert witnesses may not testify beyond the scope of their expert witness disclosure statement. The Court

7

> may exclude the testimony of an expert witness, or order other sanctions provided by law, for violation of expert witness disclosure requirements or deadlines.

*Id.* (emphasis added). Further, Local Rule 39.01(c)(5)(D) provides that "[n]o rebuttal expert witnesses shall be permitted at trial, absent timely disclosure in accordance with these rules and leave of court." *Id.* The Court's orders setting the case for trial each provide that, "[e]xpert witness disclosures shall be made timely, in accordance with Local Rule 39.01(c)(5)c." *See* Dkt Nos. 94 at 3, 261 at 2.

Vanderbilt served the Rebuttal Reports *four months* after the deadline for serving its expert disclosures and without seeking leave of court. This is plainly improper, and this Court and other courts in this Circuit regularly exclude expert reports served in violation of the court's scheduling order and the Local Rules. *See, e.g., Starlink Logistics, Inc. v. ACC, LLC,* No. 18 Civ. 0029, 2020 WL 619848 at * 3 (M.D. Tenn. Feb. 10, 2020) (rejecting rebuttal report in part because "[a]lthough rebuttal experts or reports are sometimes discussed at the initial case management conference and provided for in the initial case management order, they were never raised by either party in this case."); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:08 Civ. 2830, 2017 WL 9440795, at *4 (W.D. Tenn. Apr. 28, 2017), *report and recommendation adopted sub nom*, 2017 WL 3537597 (W.D. Tenn. Aug. 17, 2017), *aff'd sub nom. Norris v. MK Holdings, Inc.,* 734 F. App'x 950 (6th Cir. 2018) (excluding rebuttal report where "the parties' Scheduling Order does not contemplate rebuttal experts and the reports were not properly rebuttal); *Pogue v. Northwestern Mut. Life Ins. Co.*, No. 3:14 Civ. 598, 2017 WL 1520431 (W.D. Ky. April 25, 2017) (excluding rebuttal expert report served after expert disclosure deadline where party failed to seek leave of court); *see also Vaughn v. City of Lebanon,* 18 F. App'x 252, 264 (6th Cir. 2001) (affirming district court's decision to strike expert affidavits served after deadline); *Palmer v. ALDI, Inc*., No. 3:07 Civ. 0596, 2008 WL

11394160, at *1 (M.D. Tenn. June 19, 2008) (excluding expert report served five months after deadline and without seeking an extension of the deadline). Indeed, Vanderbilt failed to seek leave to submit these Rebuttal Reports, as it was required to do under the CMO and Local Rules. Its experts should therefore be precluded from testifying to any opinions therein. Rosenthal Decl., Ex. R (*Green Party of Tennessee v. Hargett,* No. 3:11 Civ. 692, Dkt No. 246, dated June 30, 2016 at 3 (Crenshaw, J.)) (excluding plaintiffs' rebuttal expert reports because plaintiffs violated Local Rule 39.01(c)(6)(d) by not seeking leave of court and served the reports after the expert disclosure deadline), *aff'd* No. 16 Civ. 6299, 2017 WL 4011854 (6th Cir. May 11, 2017).[6]

Vanderbilt has no excuse for disregarding the requirement to seek leave from the Court if it believed it had a valid basis to proffer rebuttal reports. In any event, as shown in Point II below, there is no justification, let alone substantial justification, for Vanderbilt's failure to provide full and complete expert reports setting forth all of their experts' opinions prior to its expert disclosure deadline.

## II. Vanderbilt's Breach of the Case Management Order Was Neither Substantially Justified nor Harmless

The rule in this Court is clear: "A violation of Rule 26 gives rise to the application of Rule 37(c)(1), which requires that 'if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Starlink Logistics*, 2020 WL 619848, at *2 (citing Fed. R. Civ. P. 37(c)(1)). Moreover, the test for Rule 37(c) exclusion "is very simple: the sanction is mandatory

---

[6] This same local rule is in effect today. Local Rule 39.01(c)(5)(d) provides that "No rebuttal expert witnesses shall be permitted at trial, absent timely disclosure in accordance with these Rules and leave of Court."

unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Id.* at *2 (internal citations and marks omitted). Here, Vanderbilt's violations were not substantially justified or harmless.

### A. Vanderbilt Cannot Show Substantial Justification

Although Vanderbilt has suggested in correspondence that the Rebuttal Reports were required to address "new material" relied upon by Defendants' experts, the Rebuttal Reports do not appear to address any "new material." Instead, the Rebuttal Reports improperly seek to bolster Vanderbilt's experts' disclosures with new testimony based on information previously available to them. Defendants anticipate that Vanderbilt will argue that, despite violating the CMO and the Local Rules, the Rebuttal Reports were somehow permitted by the Federal Rules of Civil Procedure. They were not.

#### 1. Rule 26 Does Not Save Vanderbilt

While Rule 26(a)(2)(D)(ii) permits a party to serve expert reports "within 30 days after the other party's disclosure" where "the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party," that schedule holds only "*[a]bsent a stipulation or a court order*." Fed. R. Civ. P. 26(a)(2)(D). Not only is there a case management order in place that governs this situation, but it specifically excludes rebuttal reports absent leave of Court—just as the parties proposed. *See* Dkt No. 93 at 7; *see also* Dkt No. 92 at 7. Vanderbilt violated the CMO, and cannot use the Federal Rules to legitimize and save its Rebuttal Reports.[7]

---

[7] Nor could Vanderbilt save its Rebuttal Reports by recasting them as "supplemental reports." Under Rule 26, "supplementation is limited to correcting inaccuracies." *Bentley v. Highlands Hosp. Corp.*, No. 15 Civ. 97, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016); *see also Green Party of Tennessee*, 2017 WL 4011854, at *2 ("The plaintiffs' attempt to recast the report as

## 2. The Rebuttal Reports Are Not Proper Rebuttal

Even if Rule 26(a)(2)(D)(ii) applied, however, the reports are not properly rebuttal. Rebuttal testimony is by nature "responsive to new information." *See In re Air Crash Disaster*, 86 F.3d 498, 528 (6th Cir. 1998) (holding that a party cannot introduce experts "merely by sticking the label 'rebuttal' on a neglected part of its affirmative case"). Vanderbilt's Rebuttal Reports do not simply "contradict or rebut evidence on the same subject matter" raised in Defendants' expert reports. Fed R. Civ. P. 26(a)(2)(D)(ii). They instead are an attempted "do over" for Vanderbilt's initial expert reports that improperly either raise new theories or try to bolster its experts' initial theories by reference to evidence that was available to them at the time Vanderbilt served its initial reports.

The following are examples of how the Rebuttal Reports offer new opinions—which could have been raised in the initial reports—or rely on previously available information to bolster the initial reports:

- In his initial report, Mr. Lovin applied a single royalty (7%) to all of the Other Scholastic Products at issue without any assessment of whether and to what extent they were allegedly based on or derived from the materials covered by the License. Nothing prevented Mr. Lovin from considering whether different rates would be appropriate for the various products under Vanderbilt's theory of the case. In his rebuttal report, however, Lovin presents new opinions with a variety of calculations that purport to adjust the royalty rate he applies "pro rata" based on the extent to which a different Vanderbilt expert (Dr. Shanahan) assessed the alleged similarities between the various Other

---

supplemental, rather than containing rebuttal or new opinions, is unconvincing. . . . [P]laintiffs have not argued that they offered the new opinions because the original report was 'incomplete or incorrect.'"). It is "not a license to freely amend expert reports to bolster a party's position." *Bentley*, 2016 WL 5867496, at *4; *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report."). "Courts have routinely rejected attempts to add new analyses, opinions, or theories under the guise of supplementation." *Bentley*, 2016 WL 5867496, at *4; *Green Party of Tennessee*, 2017 WL 4011854, at *2; *Starlink Logistics*, 2020 WL 619848, at *3.

Scholastic Products and *Read 180*. Rosenthal Decl., Ex. N (Lovin Rebuttal Report) at 11-13. He further makes a calculation purporting to correct the royalty pool applied to Vanderbilt's *Read 180* royalties, and extends this to certain of the Other Products. *Id.* at 5-10. Although similar calculations were made in the Stamm Report, the Lovin Rebuttal Report does not respond to or criticize Ms. Stamm's analysis, but inserts wholly new theories that could and should have been raised in his initial report.

- Mr. Webster admits that his rebuttal report, in addition to allegedly responding to the Schnell Report, "discuss[es] additional findings that [he made] made in reviewing files and materials produced in this litigation." Rosenthal Decl., Ex. O (Webster Rebuttal Report) at 1 ¶ 4; *see also, e.g., id.* at 10-13 ¶¶ 39-41. Vanderbilt has also admitted in correspondence that the Webster Rebuttal Report opines on additional code reviewed after his initial report was served, but *before* the Schnell Report (Rosenthal Decl., Ex. F), meaning that it is not responding to new issues raised by Mr. Schnell but simply adding untimely opinions that could have been raised in his initial report but were not. Mr. Webster also uses his report to try to bolster his purported "abstraction-filtration-comparison" analysis (*id.* at 1-4), and he spins a new theory on lines of code that *could* be matching despite modifications in formatting, and despite the fact that he identifies no such modification either in the Webster Report or Webster Rebuttal Report. Rosenthal Decl., Ex. O (Webster Rebuttal Report) at 5-7 ¶¶ 23-27.

- Although framed as responding to Dr. Okolo's key arguments, Dr. Shanahan uses his rebuttal report to revise his initial theories to try to mitigate their failings and to introduce additional information that was available when he rendered his initial report. For example, Dr. Shanahan introduces data from new keyword searches he conducted in academic databases to bolster his initial opinions. Rosenthal Decl., Ex. P (Shanahan Rebuttal Report) at 7-10. Dr. Shanahan also attempts to rebut deposition testimony of David Dockterman (*id.* at 16-17) and Margery Mayer (*id.* at 26-27), even though that testimony was available to him long before the submission of his original report.

- The Ezell Rebuttal Report does not rebut any theory raised in the Poret Report. Rather, Mr. Ezell improperly attempts to bolster the design of his fatally flawed survey with new references to the deposition transcripts of Amy Dunkin (Rosenthal Decl., Ex. Q (Ezell Rebuttal Report) at 2-3 ¶ 4, 3-4 ¶ 7) and Maggie McHugh. *Id.* at 8-9 ¶ 13. This information was available to him long before submission of his original report. The Ezell Rebuttal Report also adds a brand new theory, that "[survey] respondents who mention 'universities' or 'colleges' may have also been confused with respect to Vanderbilt University." *Id.* at 1 ¶ 2. This theory is absent from his own report, which does not apply this analysis. *Id.*, Table 2 at 35-37.

These are some examples of Vanderbilt's experts either presenting new theories on rebuttal or attempting to bolster their initial reports by reference to additional documentation that was available to them prior to issuing their reports. On this point, *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011) is instructive. There, the Sixth Circuit affirmed the exclusion of a

12

"supplemental" affidavit issued by an expert after the disclosure deadline as it "contradicted his prior causation opinion and attempted to introduce an entirely new methodology well after the point at which it would be proper." *Id.* at 681 (internal quotation omitted). Because Vanderbilt attempts to do the same here, its Rebuttal Reports should be excluded. *See id.*; *see also Estate of Barnwell v. Roane Cty., Tenn.*, No. 3:13 Civ. 124, 2016 WL 5938910, at *1 (E.D. Tenn. Apr. 5, 2016) (excluding portions of second expert report served after deadline that sought to "expand on [expert's] previously disclosed opinions.").

### B. Vanderbilt's Breaches of the Case Management Order Are Not Harmless

If permitted, Vanderbilt's attempt to substantially revise and supplement its experts' opinions after reviewing Defendants' expert reports would cause harm to Defendants by providing Vanderbilt with a clear and unfair litigation advantage. *See, e.g.*, *Covington v. Memphis Publ'g Co.*, No. 05 Civ. 2474, 2007 WL 4615978, at *4 (W.D. Tenn. Oct. 16, 2007) (excluding expert's rebuttal report because there was "no substantial justification for the failure of [Plaintiff] to provide a full and complete expert report setting forth all of [her expert's] opinions prior to the expert disclosure deadline" and that Plaintiff's "failure to do so [wa]s not harmless" because Plaintiff "clearly benefitted by having her expert . . . review [Defendant's] expert's final opinion before rendering his own final opinion, a considerable litigation advantage.").

It could also lead to many more rounds of sur-reply expert reports and associated delays, additional expense to all parties, as well as the otherwise unnecessary expenditure of judicial resources associated with the Rebuttal Reports and sur-rebuttal reports and *Daubert* challenges to them. Certainly there would be no basis to prevent Defendants from responding with new additional reports of their own if Vanderbilt's untimely disclosures were allowed. As one court in the Sixth Circuit has noted, allowing seriatim reports in violation of the CMO as Vanderbilt

13

tries to do here "would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions." *Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05 Civ. 1000, 2007 WL 1057397 at *5 (S.D. Ohio April 5, 2007). As the *Ullman* court further observed:

> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given.

*Id.* Indeed, while Vanderbilt invited Defendants' to submit sur-rebuttal reports in response to its own untimely and impermissible additional disclosures (Rosenthal Decl. ¶ 17), doing so would perpetuate this cycle of unauthorized submissions. It would also hamper Defendants, who would be forced to simultaneously work on sur-rebuttal reports while preparing for depositions. The Court should not permit Vanderbilt to obtain this litigation advantage, and to cause delay and increased expense for Defendants.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court limit Vanderbilt's experts' testimony at trial to exclude any opinions raised in the Rebuttal Reports.

Dated: Nashville, Tennessee
November 10, 2020

/s/ Thomas H. Dundon
Thomas H. Dundon #4539
Aubrey B. Harwell, Jr. #2559
Erik C. Lybeck #35233
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1100
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
tdundon@nealharwell.com
elybeck@nealharwell.com
*Attorneys for Defendant Ted S. Hasselbring*

Dated: New York, New York
November 10, 2020

/s/ Edward H. Rosenthal
Edward H. Rosenthal (*pro hac vice*) (NY Bar No. 1731835)
Caren Decter (*pro hac vice*) (NY Bar No. 4456992)
Nicole Bergstrom (*pro hac vice*) (NY Bar No. 5236344)
Viviane K. Scott (*pro hac vice*) (NY Bar No. 5468996)
FRANKFURT KURNIT KLEIN & SELZ, PC
28 Liberty Street
New York, New York 10005
Phone: (212) 980-0120
Fax: (212) 593-9175
erosenthal@fkks.com
cdecter@fkks.com
nbergstrom@fkks.com
vscott@fkks.com

*Thor Y. Urness*
Thor Y. Urness (BPR No. 13641)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, TN 37203
(615) 252-2384
turness@bradley.com

*Attorneys for Defendant/Counterclaim-Plaintiff Scholastic Inc.*

Dated: New York, New York
November 10, 2020

/s/ David J. Lender
David J. Lender (*pro hac vice*) (NY Bar No. 2583722)
Benjamin E. Marks (*pro hac vice*) (NY Bar No. 2912921)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
david.lender@weil.com
benjamin.marks@weil.com

Michael G. Abelow (No. 26710)
SHERRARD ROE VOIGT & HARBISON, PLC
150 Third Avenue South, Suite 1100
Nashville, TN 37201
(615) 742-4200
mabelow@srvhlaw.com

*Attorneys for Defendant Houghton Mifflin Harcourt Publishing Company*

15

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2020, true and correct copies of the foregoing Defendants' Memorandum Of Law In Support Of Their Motion In Limine To Exclude Expert Testimony were served by operation of the Court's CM/ECF system upon the following:

| | |
|---|---|
| Paige W. Mills<br>Audrey Anderson<br>Ashleigh Karnell<br>**BASS BERRY & SIMS PLC**<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>pmills@bassberry.com<br>audrey.anderson@bassberry.com<br>ashleigh.karnell@bassberry.com | John W. Harbin *(pro hac vice)*<br>Mary Katherine Bates *(pro hac vice)*<br>**MEUNIER CARLIN & CURFMAN, LLC**<br>999 Peachtree Street, NE<br>Suite 1300<br>Atlanta, GA 30309<br>(404) 645-7700<br>jharbin@mcciplaw.com<br>kbates@mcciplaw.com |
| *Attorneys for Plaintiff/Counterclaim-Defendant Vanderbilt University* | |

                                                */s/ Thor Y. Urness*
                                                Thor Y. Urness