IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VANDERBILT UNIVERSITY, | ) | Civil Action No. 3:18-cv-00046 |
| Plaintiff, | ) | |
| v. | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| | ) | Magistrate Judge Jeffery S. Frensley |
| SCHOLASTIC, INC., HOUGHTON | ) | JURY DEMAND |
| MIFFLIN HARCOURT PUBLISHING | ) | |
| COMPANY, and TED S. HASSELBRING, | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF VANDERBILT UNIVERSITY'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY**

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) .......................................................... 10

*E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 823 (M.D. Tenn. 2009) ......................................... 17

*Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St.*
*Bank & Tr. Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013) .................................................................... 10

*Green Party of Tennessee v. Hargett*, 2017 WL 4011854 ........................................................... 15

*Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015).................................. 12, 13, 14, 15

*Kirola v. City & Cty. of San Francisco*, No. C-07-3685 SBA (EMC), 2010 WL 373817, at *2
(N.D. Cal. Jan. 29, 2010) .............................................................................................................. 10

*New York v. Solvent Chem. Co.*, 685 F. Supp. 2d 357, 416 (W.D.N.Y. 2010), rev'd in part, 664
F.3d 22 (2d Cir. 2011), and aff'd in part, vacated in part, rev'd in part, 453 F. App'x 42 (2d Cir.
2011). .............................................................................................................................................. 12

*Reichhold, Inc. v. U.S. Metals Ref. Co.*, No. CIV 03-453 DRD, 2007 WL 1428559, at *13
(D.N.J. May 10, 2007) ................................................................................................................... 11

*Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) ................................... 16

## <u>Rules</u>

Local Rule 39.01(C)(5)(C) ............................................................................................................. 16

Local Rule 39.01(c)(5)(D) ............................................................................................................. 16

i

Plaintiff Vanderbilt University submits this memorandum of law in opposition to the Motion in *Limine* to Exclude Expert Testimony of Defendants Scholastic Inc. ("Scholastic"), Houghton Mifflin Harcourt Publishing Company ("HMH"), and Ted S. Hasselbring ("Hasselbring"), collectively, "Defendants").

## PRELIMINARY STATEMENT

More than two months after Vanderbilt provided the Defendants its expert reports in this case, Defendants served not only the reports of its expert witnesses, it also produced collectively over 800 pages of new documents, including some that Defendants' experts had expressly relied upon in reaching their expert opinions.[1] Defendants' Motion to Exclude seeks to prevent Vanderbilt's experts from responding at trial to this new information or the analyses and opinions of Defendants' experts. The expert reports Vanderbilt served on Defendants on October 26, 2020 (the "Response Reports") are allowed under the Case Management Order ("CMO") and the Local Rules. The Response Reports are appropriate under Local 39.01(c)(5)(C), which requires that experts' opinions be provided in a report, and Federal Rule of Civil Procedure 26(a)(2)(D)(ii) because they were served within 30 days of Defendants' expert reports, served on September 25, 2020 (the "Rebuttal Reports").[2]

The Response Reports appropriately respond to new information and expert opinions considered and contained in the Rebuttal Reports. Defendants cherry-pick from the Response Reports to argue they are improper because the information contained in them was available to

---

[1] Scholastic produced 845 pages of documents, including natively produced excel spreadsheets containing financial information related to the products. Further, HMH produced 18 documents, including natively produced Excel spreadsheets with significant financial documentation. As explained further below, such detailed cost and profit information had been requested by Vanderbilt but HMH and Scholastic objected and had not produced it.

Seven of these documents were coversheets for folders that Scholastic produced on a flash drive. These folders contain an additional 1,149 files, totaling 293 MB, which Scholastic later admitted were inoperable and not relied on by the Defendant's experts.

[2] October 25, 2020 was a Sunday; and the Response Reports were served on Monday, October 26.

1

Vanderbilt all along, and try to recast rebuttal arguments of Vanderbilt's experts as new opinions untethered to the Rebuttal Reports. As detailed below, Defendants are wrong on both counts. The Response Reports appropriately respond to the Rebuttal Reports and new information therein.

In addition, even if Vanderbilt is incorrect in its reading of Rule 26(a)(2)(D)(ii) of the Federal Rules, the relevant Local Rules, and the CMO, application of the five-part test for determining whether the Response Reports should be excluded under *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015), leads to the conclusion that they should *not* be excluded. Vanderbilt served these reports timely given the new information and the Rebuttal Reports, and the Defendants have been provided ample opportunity to consider these reports and depose Vanderbilt's experts concerning them. In fact, in the expert depositions, Defendants have questioned each of Vanderbilt's experts about his Response Report. And the depositions of Defendants' experts show that Defendants have had their own experts analyze the Response Reports.

Defendants claim that to allow Vanderbilt to use the Response Reports at trial would provide Vanderbilt with an unfair litigation advantage. But it is Defendants who are seeking a litigation advantage. Under their paradigm, Vanderbilt would be precluded from having its experts provide opinions on information that Defendants chose to produce after Vanderbilt's experts had produced their opening reports. And Defendants seek a trial where the jury will hear Defendants' experts critique the analyses of Vanderbilt's experts, but Vanderbilt's experts will not be allowed to respond to those criticisms or critique the analyses of the Defendants' experts. This outcome would severely prejudice Vanderbilt and would not be conducive to the truth-finding function at trial. The Court should exercise its discretion under the Local Rules and the Federal Rules of Civil Procedure and permit Vanderbilt to rely at trial on the Response Reports of Vanderbilt's experts.

## I. Facts

In 1997, Vanderbilt and Scholastic entered into an agreement (the "License Agreement") in which Vanderbilt licensed certain materials to Scholastic in exchange for a royalty on products based on or derived from those materials. Vanderbilt's claims stem from Defendants' underpayment of royalties under the License Agreement, failure to pay royalties on certain products derived from the licensed materials, infringement of Vanderbilt's trademarks by the Defendants, and Hasselbring's breach of his employment agreement and duty of loyalty.

### A. Vanderbilt's Expert's Reports

Vanderbilt has retained four experts in this case: Bruce Webster, Christopher Lovin, Timothy Shanahan, and Matthew Ezell. Webster's report analyzes the functionality and source code of the Defendants' products to show that they are derived from materials in the License Agreement. Shanahan's report establishes, based on a pedagogic analysis, that Defendants' programs are covered by License Agreement. Ezell's report establishes that the Defendants use of Vanderbilt's marks created a likelihood of confusion. Finally, Lovin's report calculates Vanderbilt's damages. Vanderbilt served opening expert reports on July 17, 2020, with the exception of Webster's Expert Report, which was served, by agreement, on July 21, 2020.

### B. Defendants' Expert Reports and Production of Additional Documents/Information

Defendants served the following four expert's Rebuttal Reports on September 25, 2020: (a) Dr. Cynthia Okolo on the issues addressed by Dr. Shanahan for Vanderbilt, specifically the pedagogical techniques and concepts in the materials licensed by Vanderbilt to Scholastic (the "Licensed Materials) and whether those indicate the alleged Derivative Products are based on or derived from the Licensed Materials; Mr. Ronald Schnell on the software in the alleged Derivative Products and the question of whether the software was based on or derived from the Licensed Materials; Mr. Hal Poret who conducted a trademark survey to respond to Vanderbilt's survey

expert; and Ms. Laura Stamm on damages.

On September 25, the same day Defendants served the Rebuttal Reports, Defendants also produced more than 900 pages of new, material documents and files (as well as a substantial amount of non-material information). The newly produced documents included voluminous new financial information for the products at issue in this case by both Scholastic and HMH, including cost and profit numbers for the products at issue during the relevant time periods.

Defendants' damages expert, Stamm, relied on the new financial information Defendants produced. For example, Stamm (a) used the cost and profit documentation that Scholastic and HMH produced to generate Exhibits 25-38 of her report, and (b) relies on new documents describing the products at issue in this case Defendants produced. (Dkt. No. 277-5, pp. 35-40), Stamm also relied on information from her conversations with (i) HMH Senior Vice President Richard Vosilla, who was not listed in Defendants' Initial Disclosures and has not been deposed, and (ii) HMH employee Charles MacMullen, who also was not listed in Defendants' Initial Disclosures and has not been deposed, in opining as to the correct amount of damages. (Dkt No. 277-5, pp. 14-16, 36-37, 39-40) (Defendants' software expert, Mr. Schnell, also interviewed Mr. MacMullen and relied on his statements.) Defendants' September 25 document production also included documents related to Scholastic own products, including one titled *Literacy Place*, on which Dr. Okolo relied in her report. (Dkt. No. 277-7, pp. 25, 49, 51-52).

Defendants' experts relied on other belatedly produced files, specifically native files related to a "demo" of the Peabody Learning Lab (the "PLL") (the program described in the License Agreement) that Defendants obtained from Laura Goin (a former colleague of Dr. Hasselbring) and produced to Vanderbilt a month after Vanderbilt served its initial Expert Reports.[3] Defendants'

---

[3] On August 19, 2020, counsel for HMH informed Vanderbilt that Laura Goin had provided HMH with these native files. Vanderbilt requested them that same day and later received them from HMH.

experts Okolo and Schnell rely on these Peabody Learning Lab Demo Files in their expert reports. Defendants' expert, Dr. Okolo, states in her report that "To review the PLL, I used a program that emulates the HyperCard programming language." (Dkt No. 277-7, pp. 10-11).[4]

### C. The Severe Restrictions on the Software Review by Vanderbilt's Software Expert

Another fact that is relevant to one disputed issue in Defendants' Motion is that Vanderbilt's software expert, Mr. Webster, had to work under a highly restrictive source code review protocol (Dkt No. 252), which, among other restrictions, required him to perform the source code review work on a restricted laptop configured and controlled by the Defendants. The restricted laptop had an extremely low display resolution and limitations on the software tools and equipment Mr. Webster could use. (For example, he could not use a second monitor screen.)[5] Declaration of John W. Harbin ("Harbin Dec."), filed herewith as Exhibit A, ¶ 8. Furthermore, any files that Webster wished to rely on must be printed at the Defendants' Counsel's offices, and then physically shipped to Webster. *Id.* These source code printouts are subject to constraints on both when they could be printed, and the total numbers of pages that could be printed. *Id.* These restrictions have resulted in significant delays, and severely hampered Webster's ability to fully analyze the Defendants' source code for evidence of copying.

### D. Vanderbilt's Meet and Efforts and Service of the Response Reports

When Vanderbilt reviewed Defendants' expert reports, Defendants' substantial new document production, and Defendants' experts' reliance on the new information, Vanderbilt approached Defendants about the need to serve responsive reports from its experts. Harbin Decl., ¶ 2. Vanderbilt initially approached Defendants about a motion for leave to serve these Responsive

---

[4] Vanderbilt requested a copy of all files used to perform Okolo's analysis. Defendants provided a program name, but not the files and configuration information used by Dr. Okolo.

[5] Defendants shipped the software code at issue to their expert, Mr. Schnell, allowing him to review the code on his home computer, which is what Mr. Webster requested but HMH refused to do. So Mr. Schnell was able to adjust and configure his computer as he wanted. Harbin Decl., ¶ 7.

Reports but eventually concluded that it was not necessary under the Case Management Order

("CMO") and the Local Rules to do so.  Based on the language of Local Rule 39.01 it appeared,

instead, that Vanderbilt merely had to serve response reports so that Vanderbilt's experts could

respond to Defendants' experts and the new information produced at trial. Vanderbilt's viewpoint

was solidified when, in the October 26 meet and confer conference, Vanderbilt's counsel asked if it

is Defendants' position that Defendants' experts can criticize Vanderbilt's experts' analyses and

opinions at trial, but that Vanderbilt's experts cannot respond to the criticisms of their work or

comment on the defense experts' opinions. Defendants' counsel confirmed that this was indeed

Defendants' position. Harbin Decl., ¶ 3.  Vanderbilt informed Defendants' counsel during the

October 26 conference that it would also be filing a responsive report from its survey expert, Mr.

Ezell, because he needed to be able to respond to the opinions of Defendants' survey expert, Poret,

and Poret's criticisms of Ezell's report. Harbin Decl., ¶ 4. [6]

Vanderbilt served Defendants with the Responsive Reports within the time set out in Rule

26(a)(2)(D)(ii) to give Defendants ample notice before expert depositions began and to maintain the

current schedule. Vanderbilt served the Response Reports[7] for each of its four experts on October

26, 2020, within 30 days of receiving Defendants' expert reports (in accordance with the timeline

set out in Rule 26(a)(2)(D)(ii)), to ensure Defendants had knowledge prior to expert depositions and

well before trial of Vanderbilt's expert's opinions about Defendants' expert's reports.[8]  Defendants'

counsel questioned each of Vanderbilt's experts about their Response Reports in depositions.

Harbin Decl., ¶ 6. And of the three defense experts deposed so far, all three had read the Response

---

[6] Vanderbilt also told Defendants' counsel that Vanderbilt would not object to their experts providing sur-rebuttal reports in response to Vanderbilt's Response Reports. Defendants declined. But Defendants' experts have commented on the Response Reports of Vanderbilt's experts in deposition.
[7] The "Lovin Response Report," "Ezell Response Report," "Webster Response Report," and "Shanahan Response Report."
[8] The current trial date is August 3, 2021 (as set in Dkt No. 261), and the first expert deposition (Defendants' deposition of Matthew Ezell) took place on November 9, 2020.

Report of Vanderbilt's counterpart expert and offered comments on it. *Id.*

**E. Vanderbilt's Response Reports are proper rebuttal that is responsive to Defendants' expert opinions and the new information produced by Defendants after fact discovery.**

Vanderbilt's Response Reports respond to the opinions and information contained in Defendants' rebuttal reports. Vanderbilt's expert Shanahan responds to the conclusions of Defendant's expert Dr. Okolo's. First, Shanahan responds to Okolo's conclusion that Vanderbilt did not create the programs at issue and that the academic techniques in the programs predated Vanderbilt's work. (Dkt No. 277-10, pp. 2-19). Second Shanahan analyzes the programs Okolo names and explains the differences between the programs named by Okolo and what is described by the 1997 License Agreement. (Dkt No. 277-10, pp. 20-26). Finally, Shanahan rebuts Okolo's arguments that Vanderbilt that Defendant's products do not derive from the 1997 License Agreement or Read 180. (Dkt No. 277-10, pp. 27-30). Similarly, Vanderbilt's expert Ezell responds to the criticisms of the Defendants' trademark expert Poret. (Dkt No. 274-07, ¶¶ 4-7, 9-13). Ezell also criticizes Poret's own, new, likelihood of confusion survey (the "Poret Survey"). Webster, Vanderbilt's software expert, responds to Schnell's claims of low levels of common code and criticism of Webster's methodology and Webster criticizes Schnell's methodology for comparing the source code files. (Dkt No. 277-09, ¶¶ 5-36). Further, Webster responds to Schnell's opinion that he did not compare the content of certain files by including a chart showing the files he looked at, and showed additional levels of similarity he found within them, as well as criticizing Schnell's methodology for comparing files. (Dkt No. 277-09, ¶¶ 37-42). The remainder of Webster's report is dedicated to responding to other opinions presented in Schnell's report. (Dkt No. 277-09, ¶¶ 43-62).

Finally, Lovin, Vanderbilt's damages expert, responds to Stamm, Defendants' damages expert. Lovin responds to Stamm's calculation of the student software share for Read 180 and the derivative products, and also responds to Stamm's trademark damages analysis. (Dkt No. 277-08,

pp. 2-11, 13-16). Similarly, Stamm calculates a pro rata royalty rate for Defendants' products based on Webster's report and Vanderbilt's expert Lovin responds by using the report of Vanderbilt's expert Shanahan to calculate a pro rata royalty rate. (Dkt No. 277-08, pp. 11-13).

## II.    <u>Argument</u>

This dispute raises questions of fundamental fairness about the trial of this case. Defendants argue that the Local Rules, combined with the Federal Rules of Civil Procedure and the CMO, bar Vanderbilt from responding to Defendants' experts or addressing the new information produced by Defendants with Defendants' expert reports. If Defendants are correct, then Defendants' experts would be immune from criticism of their opinions at trial and Vanderbilt's experts would have to stand mute while Defendants' experts criticize their analyses. It would also mean that Defendants' experts would be allowed to rely on new information that the Defendants did not produce until after Vanderbilt's expert disclosure deadline, and Vanderbilt's experts would be prevented from addressing that information. In short, Defendants are seeking an extreme and unfair litigation advantage.

Vanderbilt believes Defendants' understanding of the Local Rules and the CMO is incorrect, and that the Response Reports were properly served. If Vanderbilt is wrong, Defendants' motion should still be denied because Vanderbilt's failure to seek leave was substantially justified and harmless to Defendants. Moreover, the kind of one-sided trial Defendants propose, where Defendants' experts have free reign to criticize Vanderbilt's experts without being subject to the same criticism by Vanderbilt's experts, and the ability to cite evidence Vanderbilt's experts had not addressed, would be grossly unfair. I t is certainly not the kind of "just" trial contemplated by Fed.

R. Civ. P. 1.[9]

### A. Vanderbilt's Response Reports Were Properly and Necessarily Served.

Defendants argue that Vanderbilt's service of the Response Reports was improper under the CMO and the Local Rules. As Vanderbilt has understood the CMO and the Local Rules, Defendants' argument is incorrect. The CMO (Dkt No. 93 at 7) provides that "Rebuttal *experts* shall be permitted only by leave of court. Unless otherwise provided for in a separate pretrial order, supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e)." (Emphasis added). It does **not** say that rebuttal reports from the *existing* experts are not permitted. Similarly, Local Rule 39.01(c)(5)(D) provides that "[n]o rebuttal expert *witnesses* shall be permitted at trial, absent timely disclosure in accordance with these Rules and leave of Court"; not that existing experts cannot provide rebuttal testimony. Vanderbilt has read these provisions as addressed to previously undisclosed rebuttal expert witnesses, not to bar rebuttal testimony from expert's already named.[10] Vanderbilt's opinion was buttressed by Local Rule 39.01(c)(5)(C), which provides that "[e]xpert witnesses may not testify beyond the scope of their expert witness disclosure statement."

As neither the CMO nor the cited Local Rules expressly address this situation, and as no different date or procedure was set in the CMO, the default set out in Fed. R. Civ. P. 26(a)(2)(d)(ii), should apply. Consistent with this interpretation, Local Rule 39.01(c)(5)(C) provides that "[e]xpert witness disclosures must be made timely in accordance with any order of the Court, *or if none, in*

---

[9] That is one reason why Vanderbilt concluded it did not need to seek leave, because Local Rule 39.01(c)(5)(C) prohibits expert witnesses from testifying "beyond the scope of their expert witness disclosure statement."

[10] In *Green Party of Tennessee v. Hargett*, No. 16 Civ. 6299, 2017 WL 4011854 (6th Cir. 2017)(discussed below), the court appears to interpret Local Rule 39.01(c)(6)(d) as applying to rebuttal reports by the same expert, not just newly-named rebuttal experts. *Id.* at *2. But no party appears to have raised this issue. Moreover, as discussed below, the facts in *Green Party of Tennessee* are different from this case,

9

*accordance with Fed.R.Civ.P. 26(a)(2).*"

FRCP Rule 26(a)(2)(d) sets a default deadline of "30 days after the other party's disclosure" Vanderbilt complied with that deadline; serving the Response Reports on October 26 (the next business day after Sunday, October 25), thus 30 days after Defendants served their expert reports on September 25. Hence, Vanderbilt submits its Response Reports are timely and proper under the CMO, the Local Rules, and FRCP Rule 26.

Defendants cited *Starlink Logistics, Inc. v. ACC, LCC*, No. 1:18-CV-0029, 2020 WL 619848 (M.D. Tenn. Feb. 10, 2020) in support of their argument, but that case actually supports Vanderbilt's position. In *Starlink*, the defendants served a responsive appraisal expert report more than 2.5 months after the plaintiff's report and *after* the defendant deposed the plaintiff's expert about their report. Id. at *3. The court excluded the defendant's responsive report under those circumstances. After noting Local Rule 39.01 and that the case management order in that case provided, as here, that rebuttal expert reports were allowed only by leave of court, the court analyzed the issue under Rule 26, stating that:

> As to rebuttal reports, **the Federal Rules of Civil Procedure allow for an expert to provide a report that "rebuts" a report submitted by an expert on the other side**. This rebuttal must be intended "solely" to contradict or rebut "evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). **Absent a stipulation or court order, this rebuttal report must be disclosed "within 30 days after the party's disclosure."** *Id*. at 2.

The court then noted that "'the rule does not authorize any additional round of rebuttal *following expert deposition testimony*." *Gardner v. Dye*, 3:15-C-00669 2016 WL 9244200, at *6 (M.D. Tenn. July 1, 2016). Further, the Local Rules of this Court provide that '[n]o rebuttal expert witnesses shall be permitted at trial, absent timely disclosure in accordance with these Rules and leave of Court.' L.R. 39.01(c)(5)(D)." *Id*.

Because, *inter alia*, the defense expert's second report was not timely under Rule 26, the

court found that Rule 26 was violated giving rise to the application of Rule 37(c)(1). *Id.*[11]

If Defendants' argument here were correct, the court in *Starlink* would not have needed to analyze whether the second report, which it deemed a rebuttal report (*id.* at *3), was timely under Rule 26. Equally important, here, in contrast to the situation in *Starlink*, Vanderbilt served its experts' Response Reports in timely fashion under Rule 26, and before *any* expert depositions.[12]

Defendants complain about Vanderbilt's alleged delay of "four months." (Dkt No. 275 at 6, 9). But that argument refers to the period between Vanderbilt's *initial* Reports and the *Response* Reports, while ignoring that Vanderbilt's Responses were promptly served a month after the Defendants' Rebuttal Reports, and following notice to the Defendants that Vanderbilt intended to do so.[13] Plainly, Vanderbilt could not respond to Defendants' expert reports before receiving the same. Accordingly, the Response Reports were timely served pursuant to Fed. R. Civ. P. 26(a)(2)(d)(ii), notwithstanding Defendants' arguments to the contrary.

## B. The Other Cases cited by the Defendants are Easily Distinguishable.

The cases Defendants cite are very different from this case and does not suggest this court should bar Vanderbilt's proffered expert testimony. *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.* is inapplicable. In that case, the excluded rebuttal expert did not produce an affirmative report by the affirmative report deadline and produced a defective expert report that did not comply with the disclosure requirements of FRCP 26. *In re Regions Morgan Keegan Sec.,*

---

[11] Fed. R. Civ. P. 37(c)(1) provides "(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Applying the factors of Rule 37(c)(1), the court in *Starlink* excluded the second report but allowed the defense attorney to cross-exam the plaintiff's expert on the related grounds. *Id.* at *5. Doing so, the court found, "strikes an appropriate balance under Rule 26(a) and Rule 37(c)." *Id.*

[12] Some of the language of the *Starlink* decision seems to conflate rebuttal reports from a previously-identified expert report and a new expert offered on rebuttal, contrary to one of Vanderbilt's arguments here. *Id.* But the court's analysis in *Starlink* indicates that a timely rebuttal under Rule 26 would be considered, notwithstanding the language of the case management order.

[13] And Vanderbilt offered to permit a sur-reply disclosure.

11

*Derivative & ERISA Litig.*, No. 2:08-CV-2830, 2017 WL 9440795, at *4 (W.D. Tenn. Apr. 28, 2017), *report and recommendation adopted sub nom*, 2017 WL 3537597 (W.D. Tenn. Aug. 17, 2017), *aff'd sub nom*. in *Norris v. MK Holdings, Inc.*, 734 F. App'x 950 (6th Cir. 2018). Nor does the Sixth Circuit's decision in *Norris v. MK Holdings* support Defendants' argument. In dictum, the court affirmed the exclusion of the plaintiff's expert because (a) it was not rebuttal testimony to the defendants' expert because (it did not respond to the analysis or conclusions of the defendants' expert); and, (b) even if it could, the disclosed testimony failed to comply with the disclosure requirements in FRCP 26(a)(2)(B). *Norris*, 734 F. App'x 950 at 960. Here neither factor is present. The Response Reports by Vanderbilt's experts are plainly in rebuttal of Defendants' experts, and there is no argument that they did not meet the disclosure requirements of Rule 26(a)(2)(B).[14]

In *Estate of Barnwell v. Roane County, Tenn.*, No. 3:13-CV-124, 2016 WL 5938910 (E.D. Tenn. 2016), the plaintiff's expert belatedly submitted a second report three months after the close of expert discovery containing new opinions in response to the defendant's Daubert motion. The court excluded part but not all of the late-filed report. *Id.* at *1. As for *Palmer v. Aldi, Inc.*, No. 3:07 Civ. 0596, 2008 WL 11394160 (M.D. Tenn. 2008), and *Vaughn v. City of Lebanon*, 18 F. App'x 252 (6th Cir. 2001), both cases involved a plaintiff who failed to submit an expert by the deadline, not this situation.

The Defendants also rely on *Green Party of Tennessee v. Hargett*, No. 16 Civ. 6299, 2017 WL 4011854 (6th Cir. May 11, 2017) to support the proposition that any rebuttal testimony in Vanderbilt's Response Reports should be excluded. But in *Green Party of Tennessee*, the Plaintiffs did not provide the report at issue within the time required by the scheduling order or seek an extension. *Id*. at *2. In this case, Vanderbilt's Response Reports were served within 30 days as

---

[14] Furthermore, in *Pogue v. Northwestern Mut. Life Ins. Co.*, No. 3:14 Civ. 598, 2017 WL1520431, *3 (W.D. Ky. April 25, 2017), the party described the rebuttal report as an addition to an insurance claim file while at the same time seeking to rely on the report for litigation, again not this case.

required by Rule 26(a)(2)(D)(ii), and these issues can be addressed well before trial. Moreover, here, Defendants had the benefit of the Response Reports prior to depositions, so they were not prejudiced or blindsided by any information.

     **C. If the Court finds that moving for leave was required, Vanderbilt's Failure to Do So Previously is Substantially Justified and Harmless, and the Response Reports Should Not Be Excluded.**

     As described above, Vanderbilt believes its service of the Response Reports was proper under the CMO and the Local Rules. But if the Court disagrees, the Court should still allow the opinions disclosed in the Response Reports to be used at trial, because the failure to seek leave was both substantially justified and harmless. Therefore, the Response Reports should not be excluded. Vanderbilt will review the Defendants' arguments about the reports and then apply the Sixth Circuit's test for whether the disclosure without leave is justified and harmless.

     <u>1. Defendants' argument that the Response Reports are improper because they cite evidence that was available to the expert beforehand or offer new opinions lacks merit.</u>

     Defendants argue that it is improper for Vanderbilt's experts to rely on information available to them when Vanderbilt's initial reports were served (Dkt No. 275 at 11), regardless of whether the expert thought at the time the information was relevant or necessary. Defendants' argument is contrary to the law and, regardless, the portions complained of are proper rebuttal. Moreover, Defendants only complain about discrete portions of plaintiff's Response Reports. If the Court finds that any portion Defendants cite are not proper rebuttal or otherwise justified, the Court should only strike that portion of the report at issue, and not the balance.

     Defendants' argument is based on an incorrect legal premise. Courts have rejected the argument that anything that *could have* been cited in an original report must be excluded. *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) ("The Third Circuit's rule does not automatically exclude anything an expert could have included in his or her original report. *Such a rule would lead*

*to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert* from later introducing the relevant material. All that is required is for the information to repel other expert testimony").

The Defendants only identify four instances of alleged "new opinions:" (1) Shanahan's results from performing a keyword search on an academic database; (2) Ezell's elaboration on how certain survey respondents mentioning "universities" may be confused as to the Vanderbilt Mark Lovin's Response Report responds to the pro-rata royalty rate proffered by Defendants' damages expert, Stamm, and offers an alternative; and (4) Webster relies in part on files reviewed after his initial report to rebut certain criticisms. (Dkt. No. 275 at 11-12).

First, Shanahan's review of a database of academic publications was *directly responsive* to Okolo's rebuttal report. Okolo contends that certain educational techniques were known before Vanderbilt's research. Shanahan reported the results of his searches of academic databases to show this was not the case. (Dkt. No. 277-10, pp. 7-10). An expert does not have to write a treatise to support every opinion. Moreover, it would have been wasteful for Shanahan to provide that detail in his initial report Vanderbilt does not accept the premise of Dr. Okolo's report that all the features of the licensed Materials have to originate at Vanderbilt for the accused products to be derivative of the licensed Materials. Only when Okolo gave her opinion did this information become significant. *Crowley, supra.*; *see also Kirola v. City & Cty. of San Francisco*, No. C-07-3685 SBA (EMC), 2010 WL 373817, at *2 (N.D. Cal. Jan. 29, 2010) ("As a general matter, courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter… Rebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure").

14

Second, Defendants argue that Ezell's Response Report does not rebut Poret's theory but "adds a brand new theory" that "respondents who mention 'universities' or 'colleges' may have also been confused with respect to Vanderbilt University." (Dkt No. 275 at 12). However, this ignores that Ezell does rebut Poret's assertion that his survey methodology is superior and Ezell's "new theory" is actually a rebuttal of Poret's report. The full sentence from the cited paragraph 2 of Ezell's Response Report is:

> However, **given the nature of Mr. Poret's survey's reliance** on respondents' memories (which is discussed in greater detail below), I submit that respondents who mention "universities" or "colleges" may have also been confused with respect to Vanderbilt University, especially since Vanderbilt is the only university that appears twice in the promotional materials used as a survey stimulus. (Dkt No. 274-7, par. 2) (emphasis supplied)).[15]

In addition, the complaint about Ezell's cites to deposition testimony in his Response rings hollow. Each of the citations Defendants note in their brief is part of a rebuttal to Poret's report. Ezell's cites the Duncan deposition as part of Ezell's response to Poret's claims of failure to replicate market conditions and survey bias. (Dkt 274-7, pp. 2-4). And Ezell's cite to McHugh's deposition is part of Ezell's response to Poret's claim of improper control. *Id*. at p. 8 ¶ 13. Again, an expert does not have to cite every possible supporting fact in the initial report or anticipate how the opposing expert will attack the opinions. *Kirola, supra.*, 2010 WL 373817, at *2 ("As a general matter, courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter… Rebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure").

Third, Defendants complain that the pro-rata royalty rate calculation in Lovin's Response Report should be excluded because it "could have been raised in the initial reports." (Dkt No. 275 at 11). However, Lovin's calculation responds to defense expert Stamm's opinion calculating a pro

---

[15] In addition, the complaint about Ezell citing deposition testimony in his Response rings hollow.

rata rate based on the work of Defendant Webster's report and Lovin responds by using the report of Vanderbilt's expert Shanahan as a more appropriate basis on which to calculate a royalty rate, Dkt No. 277-8, pp. 11-13. And his royalty pool calculation Defendants complain about is specifically responding to a calculation that Stamm made. *Id*. at 11. Therefore, Lovin's Response Report is a predictable response to Stamm's Report because it applies a methodology analogous to Stamm's to facts that were already in the record (but that Stamm's Report ignored).Fourth, Defendants argue that Webster's Response Report should be excluded because it includes opinions based on source code comparisons performed after Webster's initial report was served, but before Defendants' Expert Ronald Schnell served his rebuttal report. Even though this work was performed before Schnell's rebuttal report was served, it was intended to address anticipated opinions of lack of common or similar code and Defendants' software expert, Ronald Schnell, in fact made several arguments that Webster predicted. The work that Webster performed is directly responsive to Schnell's criticisms and informed some of the opinions found in Webster's Response Report. Moreover, none of Webster's disclosed opinions in the Response Report are based on newly served files (unlike what Defendants did in conjunction with their expert reports. Not only are the source code files *in HMH's possession,* Mr. Webster cited all but four of those same files for other reasons in his initial report. Mr. Schnell reviewed them in the course of developing his opinions and report as well. (Dkt No. 277-06, para. 32). Additionally, this situation is analogous to cases where the courts have allowed supplementation of an expert report that could not be completed prior to the time of the expert's original report. *Reichhold, Inc. v. U.S. Metals Refin. Co.*, Civ. No. 03-453 (DRD), 2007 WL 1428559, at *13 (D.N.J. May 10, 2007) (allowing supplementation of an expert report when the expert received additional data from EPA FOIA documents). As described above, Webster as subject to an extremely restrictive review process (Dkt No. 252) which greatly delayed his work.

In addition, Defendants' argument that any additional work done or information cited cannot be proper rebuttal is incorrect. "[A]" rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert" *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013).

Finally, Defendants' complaint that Vanderbilt is seeking a "do over" of its expert reports is disingenuous when Defendants have very recently served Vanderbilt with substantive revisions to Defendants' expert reports. Most significantly, Defendants served a "revised" version of Appendix B to Okolo's report (her "References") less than a week before her upcoming deposition, adding numerous sources and nearly doubling the length of Okolo's Appendix B, attempting to bolster Okolo's opinions after Shanahan's Responsive. Not only that, on the same day (Dec. 3), Scholastic produced documents allegedly considered by Okolo in her September 25th report, cited in Okolo's "Resubmitted" Appendix B.

In sum, the material included in the Response Reports responds to new information or opinions of Defendants' experts and thus is appropriate rebuttal. Moreover, Defendants' complaints implicate only the following portions of each Responsive Report (a) pages 7-10, 16-17 and 26-27 of Shanahan's report (Dkt. No. 277)); (b) one paragraph (¶ 2) of Ezell's report (Dkt. No. 274-7); (c) §3 of Lovin's report (Dkt. No. 277-8, pp. 5-13); and (d) ¶¶ 37-42 of Webster's report. (Dkt. No. 277-9, pp. 9-13). If the Court finds any of these portions to be improper, only those portions should be excluded.

## 2. Defendants' argument that the Response Reports do not address new material is also wrong.

Defendants contend that Vanderbilt's Response Reports "do not appear to address any 'new material'" and should be excluded as late "supplemental" reports, citing *Pluck v. BP Oil Pipeline*

*Co.*, 640 F.3d 671 (6th Cir. 2011).(Dkt No. 275 at 10), But even a cursory view of Vanderbilt's Response Reports shows that all of the reports respond at least in part, to "new material" produced by Defendants and all of Vanderbilt's Response Reports contradict and rebut evidence identified by Defendants' expert reports. Therefore, cases excluding late "supplemental" affidavits (like *Pluck*) are inapplicable to Vanderbilt's Response Reports because Vanderbilt's Response Reports contain proper rebuttal opinions

For example, Shanahan's Response Report explicitly lists the 'new material' at the end of the Shanahan Response Report and includes citations to the following documents produced after Vanderbilt's Expert Reports were served.

- Scholastic, Inc. (No date). *Wiggleworks: The early literacy system proven to raise reading achievement*. New York: Author (Scholastic – 0012927).[16]

- Scholastic, Inc. (1996). *Visit Literacy Place* (introductory videos: 00012835.MP4; 00012925.MP4, 00012926.MP4.[17]

- The Peabody Learning Lab Hypercard Files[18]

Lovin's Response Report also cites to "new material" relied on by Defendants in the Stamm report, including Exhibits 15 and 37 of Defendants' Expert Stamm's report, which in turn are based on the new documents Defendants produced with their expert reports. Furthermore, Stamm summarizes Scholastic's profits based on financial spreadsheets produced by Scholastic at the same time as her report.  -

---

[16] Scholastic-0012927was produced as part of Scholastic's "VOL 10" production on September 25, 2020.
[17] These document numbers correspond to the Scholastic Documents marked Scholastic-00012835, Scholastic-00012925, and Scholastic-00012926, each of which was produced as part of Scholastic's "VOL 10" production on September 25, 2020.
[18] Vanderbilt received a copy of these files from HMH's Counsel on August 19, 2020.

- Stamm Exhibit 15: Based in part on the (previously undisclosed) conversation with Charlie MacMullen and Stamm's Appendix F.1, which cites the newly produced Excel spreadsheet marked HMH_00024656.[19]

- Stamm Exhibit 29: Based on the newly produced excel sheet titled "Copy of Read180Profitability Model 083113 to Auditors.xls" (produced as SCHOLASTIC-00012995).

- Stamm Exhibit 37: Based on Stamm Exhibits 31-35, and Stamm Exhibits 31-35 are based at least in part on the newly produced Excel spreadsheets marked HMH_24673 and HMH_24674.[20]

It should be noted that Stamm's Exhibit 37 is titled "HMH – Summary of Profits on At-Issue Revenue" and that Vanderbilt requested from HMH "all financial records and books reflecting sales, profits or revenues from the sale or distribution of Read 180." However, HMH objected to this request and did not produce financial records sufficient to determine profits from the sale of Read 180 or the other products at issue in this case until HMH produced their expert reports. Lovin, Vanderbilt's financial expert, was therefore unable to opine on such information when preparing his initial report. Vanderbilt also requested "a copy of all financial records and books reflecting sales, profits or revenues from the sale or distribution of Read 180" from Scholastic, who also objected and did not produce this information prior to Vanderbilt's expert disclosure deadline. After Vanderbilt's expert disclosure deadline passed, however, Scholastic did produce this information, including the above-mentioned spreadsheet relied on by Defendant's expert Stamm. As noted above, Defendants' trademark expert Poret performed his own trademark survey using his own survey design. The Poret survey design, and the Poret survey results, are clearly *new material* and

[19] HMH_00024656 was produced as part of HMH's VOL. 15 production on September 26, 2020.
[20] HMH_24673 and HMH_24674 were produced as part of HMH's VOL. 15 production on September 25, 2020.

are subject to proper rebuttal testimony.[21]

Defendants have moved to exclude all of the above testimony, effectively taking the position that *only Vanderbilt's survey can be critiqued at trial*. If Ezell is not permitted to testify regarding Poret's report, it would allow Defendants to present Poret's survey evidence unchallenged at trial, while Poret is free to criticize Vanderbilt's survey design.

### 3. Vanderbilt should be allowed to use the opinions in the Response Reports at trial.

In the Sixth Circuit, a 5-factor test is used to determine whether such a disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered;
>
> (2) the ability of that party to cure the surprise;
>
> (3) the extent to which allowing the evidence would disrupt the trial;
>
> (4) the importance of the evidence; and
>
> (5) the nondisclosing party's explanation for its failure to disclose the evidence.
>
> *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Applying the five factors shows that Defendants' motion should be denied.

### 4. The Defendants were not surprised by Vanderbilt's Response Reports or the information contained therein.

As described above, Vanderbilt's counsel promptly and repeatedly attempted to resolve these issues with Defendant's counsel. Vanderbilt's counsel first raised the issue of new information and reply reports on October 6, 2020, just over a week after Defendants' served their expert reports, and again on October 13, 2020. While Vanderbilt and Defendants were not able to come to an agreement, Vanderbilt's communications with Defendants alerted Defendants to Vanderbilt's position. Vanderbilt did not state initially that Vanderbilt's trademark expert would also be

---

[21] And Mr. Webster reviewed the PLL demo program that Schnell and Okolo reviewed.

preparing a rebuttal report, but upon further considering the Local Rules and Defendants' position that Vanderbilt's experts should not be allowed to critique Defendants' experts or respond to the latter's criticism of Vanderbilt's experts, Vanderbilt determined that a response report was necessary for Ezell as well to protect his ability to rebut Defendants' survey and associated opinions at trial, and so informed Defendants' counsel.

Further, no new documents were produced in conjunction with Vanderbilt's Response Reports, and the opinions included in Vanderbilt's Response Reports (unlike Defendants' expert reports) were not based on new document productions by Vanderbilt. Therefore, the first *Howe* factor weighs in favor of not excluding Vanderbilt's Response Reports.

5. Even if Defendants were surprised by Vanderbilt's Response Reports, the timing of Vanderbilt's Response Reports gave Defendants ample time to cure that surprise; there is no harm to Defendants.

If the Court finds Defendants were in some way surprised, they have had ample time to cure, and have cured, any alleged surprise. There is no cognizable prejudice to Defendants. First, Vanderbilt served the Response Reports on Defendants before the depositions of *any* experts. Defendants were able to, and indeed have, questioned each of Vanderbilt's experts in deposition about that expert's Response Report. Further, Vanderbilt has to date deposed three of Defendants' four experts and all three had read and commented on the Response Report of Vanderbilt's corresponding expert. Vanderbilt has also repeatedly told Defendants indicated that it would not object to Defendants' providing sur-rebuttal reports, an offer Defendants have rejected. Harbin Decl., ¶ 5.

When the opposing party has access to the same information used to formulate the expert's opinions, and the opposing party has the ability to explore the basis of the opinions, even the use of undisclosed opinions *at trial* can be harmless. *New York v. Solvent Chem. Co.*, 685 F. Supp. 2d 357, 416 (W.D.N.Y. 2010), rev'd in part, 664 F.3d 22 (2d Cir. 2011), and aff'd in part, vacated in part,

rev'd in part, 453 F. App'x 42 (2d Cir. 2011). Clearly Defendants can show no harm here.

It is indisputable that Defendants have had the opportunity to cure any alleged surprise, and have already done so. Accordingly, this *Howe* factor weighs strongly in favor of allowing Vanderbilt's Response Reports.

6. Allowing Vanderbilt's Experts to Rely on the opinions found in Vanderbilt's Response Reports would not disrupt the trial.

The current trial date is August 3, 2021, leaving significant time in the schedule to address any alleged issues created by Vanderbilt's Response Reports. Therefore, the third *Howe* factor also weighs in favor of allowing Vanderbilt's Response Reports. One reason that Vanderbilt served the Response Reports was to *avoid* any disruption of the trial. Defendants' position notwithstanding, Vanderbilt submits that fairness requires that Vanderbilt's experts be allowed to respond to Defendants' expert opinions and critiques of Vanderbilt's experts' opinions, just as Defendants' experts have done. Vanderbilt served Defendants with the Response Reports (again before any expert depositions had been taken) in an effort to forestall any complaint at trial that an expert is offering a new opinion.

7. Vanderbilt's Response Reports are crucial to deciding this case on the merits.

This case is highly complicated and relies on expert witness testimony in the fields of education, trademark likelihood of confusion, software, and finance. Both parties have retained witnesses in these fields, and their testimony will be essential to helping the jury decide the case on the merits. Vanderbilt's Response Reports include testimony about the correct measure of damages, analysis of the product source code, analysis of the Defendants' likelihood of confusion survey, and analysis and tracing of pedagogic concepts in educational products. These subjects directly relate to Defendants' liability and the correct measure of damages. Moreover, as stated, allowing the use of Vanderbilt's Response Reports is critical to level the playing field and permit a decision on the merits. Defendants' experts had the opportunity to respond to and critique Vanderbilt's expert

reports.  In fairness, Vanderbilt's experts need to have the same ability. Otherwise, the trial will be one-sided.  The fourth *Howe* factor weighs in favor of allowing Vanderbilt's Response Reports.

<u>8.  Vanderbilt's explanation and the record make it clear that Vanderbilt's serving the Response Reports without leave was justified and not an effort to gain any unfair litigation advantage.</u>

 The fifth factor considers the explanation for not having disclosed the evidence earlier. *Howe, supra.*, 801 F.3d at 748.  In this case, the opinions were produced when they were because Vanderbilt's experts were responding to Defendants' experts' analyses and opinions, and the related new information Defendants produced.  Defendants cite a few instances of opinions or information Vanderbilt's experts provided that Defendants contend they could have provided in their initial reports. As noted, Vanderbilt disagrees with much of Defendants' contentions but, even assuming that is true, just because something *could have* been cited in an original report does not mean it must be excluded.  *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004); *Thompson v. Doane Pet Care Co*., 470 F.3d 1201, 1203 (6th Cir. 2006) ("Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report.  No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."). Last, Webster's tables indicating findings of similarity of file *content* for files he already identified as having similar *names* in his initial report responds to Schnell's critiques that the file names alone were not indications of similarity and that Schnell believed Webster had not shown "enough" similarity between the source code sets.  As described above, Webster worked under a highly restrictive source code review protocol and completed part of his analysis after the service of his original report.  Even the four additional source code files identified by Webster were based on a review of the Defendants' own source code, therefore there is no prejudice to Defendants' expert, who had access to the same files, without the restrictions that Webster was subject to.

Therefore, all five *Howe* factors weigh in favor of finding that Vanderbilt's Response Reports are substantially justified and/or harmless, and therefore the court should exercise its discretion under FRCP 37 and deny Defendants' motion to exclude Vanderbilt's Response Reports.

## III. Conclusion

For the reasons stated above, Vanderbilt's Response Reports include opinions that are properly rebuttal and are responsive to Defendants' experts and the new information produced by Defendants. Vanderbilt served the Response Reports to give Defendants ample notice of their experts' opinions before expert depositions, not to gain a litigation advantage. It is Defendants who are seeking a litigation advantage by trying to restrict the ability of Vanderbilt's experts to address the disputed issues at trial. Vanderbilt believed its service of the Rebuttal Reports was proper under the CMO and the Local Rules. To the extent that the Court finds that the Vanderbilt's service of the Response Reports was in error, Vanderbilt's actions were substantially justified and harmless to the Defendants. Therefore, Vanderbilt's Experts should be allowed to rely on the opinions contained in Vanderbilt's Response Reports at trial and Defendants' motion should be denied.

Respectfully submitted,

/s/ *John W. Harbin*
John W. Harbin (*pro hac vice*)
(Georgia Bar #324130)
Mary Katherine Bates (*pro hac vice*)
(Georgia Bar #384052)
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
(404) 645-7700
jharbin@mcciplaw.com
kbates@mcciplaw.com

Paige W. Mills #016218

24

Audrey J. Anderson #031910
Mary Leigh Pirtle #026659
Ashleigh Karnell #036074
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
pmills@bassberry.com
audrey.anderson@bassberry.com
mpirtle@bassberry.com
ashleigh.karnell@bassberry.com

*Attorneys for Plaintiff Vanderbilt University*

## CERTIFICATE OF SERVICE

I certify that on December 8, 2020, by filing with the Court's ECF system, I caused to be served a true and accurate copy of **Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion in *Limine* to Exclude Expert Testimony**, on the following:

Caren Decter (*pro hac vice*)
Edward H. Rosenthal (*pro hac vice*)
Viviane K. Scott (*pro hac vice*)
Frankfurt, Kurnit, Klein & Selz, P.C
28 Liberty Street
New York, NY 10005
(212) 826-5524
cdecter@fkks.com
erosenthal@fkks.com
vscott@fkks.com

Nicole Bergstrom (*pro hac vice*)
Frankfurt, Kurnit, Klein & Selz, PC
28 Liberty Street, 35th Floor
New York, NY 10005
(212) 705-4858
nbergstrom@fkks.com

Thor Y. Urness, #13641
Kimberly M. Ingram #35191
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203-0025
(615) 244-2582
turness@bradley.com
kingram@bradley.com

*Attorneys for Defendant Scholastic Inc.*

Benjamin E. Marks (*pro hac vice*)
David J. Lender (*pro hac vice*)
Jessica Falk (*pro hac vice*)
Sara Lonks (*pro hac vice*)
Taylor Dougherty (*pro hac vice*)
Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
benjamin.marks@weil.com
david.lender@weil.com
jessica.falk@weil.com
sara.lonks@weil.com
taylor.doughrty@weil.com

Michael G. Abelow, #26710
Sherrard Roe Voight & Harbison, PLC
150 Third Avenue South
Suite 1100
Nashville, TN 37201
(615) 742-4532
mabelow@srvhlaw.com

*Attorneys for Defendant Houghton Mifflin Harcourt Publishing Company*

Aubrey B. Harwell, Jr., #2559
Thomas H. Dundon, #4539
Erik C. Lybeck, #35233
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
tdundon@nealharwell.com
elybeck@nealharwell.com

*Attorneys for Defendant Ted S. Hasselbring*

26

*/s/ John W. Harbin*
John W. Harbin

27